**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GHASSAN ALASAAD, NADIA ALASAAD,    )
SUHAIB ALLABABIDI, SIDD BIKKANNAVAR,)
JÉRÉMIE DUPIN, AARON GACH, ISMAIL    )
ABDEL-RASOUL AKA ISMA'IL    )
KUSHKUSH, DIANE MAYE, ZAINAB    )
MERCHANT, MOHAMMED AKRAM SHIBLY, )
AND MATTHEW WRIGHT,    )
    )
    Plaintiffs,    )
    )
    v.    )    Civil Action No. 17-cv-11730-DJC
    )
KIRSTJEN NIELSEN, SECRETARY OF    )
THE U.S. DEPARTMENT OF HOMELAND    )
SECURITY, IN HER OFFICIAL CAPACITY;    )
KEVIN MCALEENAN, ACTING    )
COMMISSIONER OF U.S. CUSTOMS AND    )
BORDER PROTECTION, IN HIS OFFICIAL    )
CAPACITY; AND THOMAS HOMAN, ACTING )
DIRECTOR OF U.S. IMMIGRATION AND    )
CUSTOMS ENFORCEMENT, IN HIS OFFICIAL )
CAPACITY,    )
    )
    Defendants.    )
    )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................- 1 -

BACKGROUND ............................................................................................................- 2 -

I.      LEGAL BACKGROUND ...................................................................................- 2 -

II.     FACTUAL BACKGROUND ...............................................................................- 4 -

III.    PLAINTIFFS' CLAIMS AND PRAYER FOR RELIEF .............................................- 5 -

ARGUMENT ................................................................................................................- 6 -

I.      STANDARD OF REVIEW ..................................................................................- 6 -

II.     SUMMARY OF ARGUMENT .............................................................................- 7 -

III.    PLAINTIFFS LACK STANDING AND THEIR CLAIMS SHOULD BE
        DISMISSED ....................................................................................................- 8 -

        A.      Plaintiffs' Vague Averment of Possible Future Injury Does Not Set Forth Any
                Harm that Is Certainly Impending ..................................................................- 10 -

        B.      Plaintiffs Fail to Allege Facts to Support Their Injury that Defendants are
                Retaining Plaintiffs' Information ......................................................................- 13 -

        C.      Plaintiffs Cannot Show an Article III Injury Predicated on a Future Subjective
                Chill of their Speech ........................................................................................- 14 -

IV.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON FIRST OR FOURTH
        AMENDMENT GROUNDS .................................................................................- 15 -

        A.      Electronic Device Searches at the Border Require Neither a Warrant Nor
                Probable Cause..................................................................................................- 16 -

        B.      Plaintiffs Cannot State a Claim for a First Amendment Violation Based Upon
                a Border Search of "Expressive Materials" .......................................................- 21 -

        C.      Plaintiffs Cannot Show a Fourth Amendment Violation in the Detention of
                Electronic Devices at the Border .....................................................................- 23 -

CONCLUSION.............................................................................................................- 27 -

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abidor v. Johnson*,
   No. 10-CV-4059 (ERK), 2016 WL 3102017 (E.D.N.Y. June 2, 2016) ................................ 19

*Abidor v. Napolitano*,
   990 F. Supp. 2d 260 (E.D.N.Y. 2013) .................................................................. 12

*Allen v. Wright*,
   468 U.S. 737 (1984), *abrogated on other grounds by*, *Lexmark Int'l, Inc. v. Static Control
   Components, Inc.*, 134 S. Ct. 1377 (2014) ............................................................. 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................. 10, 11

*City of Los Angeles, Cal. v. Patel*,
   135 S. Ct. 2443 (2015) ................................................................................. 16

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013) ....................................................................... 9, 11, 14, 15

*Conservation Law Found. of New England, Inc. v. Reilly*,
   950 F.2d 38 (1st Cir. 1991) ............................................................................ 12

*Herring v. United States*,
   555 U.S. 135 (2009) .................................................................................... 14

*Hochendoner v. Genzyme Corp.*,
   823 F.3d 724 (1st Cir. 2016) .......................................................................... 13

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013) ................................................................................. 10

*House v. Napolitano*,
   No. CIV. A. 11-10852-DJC, 2012 WL 1038816 (D. Mass. Mar. 28, 2012) .................. *passim*

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) ........................................................................... 13

*Laird v. Tatum*,
   408 U.S. 1 (1972) ...................................................................................... 14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................. 8, 12, 15

*Maldonado v. Fontanes,*
    568 F.3d 263 (1st Cir. 2009) ............................................................ 7

*Navarette v. California,*
    134 S. Ct. 1683 (2014) .................................................................... 17

*Pa. Bd. of Prob. & Parole v. Scott,*
    524 U.S. 357 (1998) ........................................................................ 13

*Peñalbert-Rosa v. Fortuño-Burset,*
    631 F.3d 592 (1st Cir. 2011) ............................................................ 7

*Raines v. Byrd,*
    521 U.S. 811 (1997) ........................................................................ 8

*Ramirez v. Sanchez Ramos,*
    438 F.3d 92 (1st Cir. 2006) ............................................................ 10

*Reddy v. Foster,*
    845 F.3d 493 (1st Cir. 2017) .......................................................... 12

*Riley v. California,*
    134 S. Ct. 2473 (2014) .............................................................. 18, 19

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ...................................................................... 12

*Susan B. Anthony List v. Driehaus,*
    134 S. Ct. 2334 (2014) .................................................................... 9

*Sutliffe v. Epping Sch. Dist.,*
    584 F.3d 314 (1st Cir. 2009) .......................................................... 12

*Tabbaa v. Chertoff,*
    509 F.3d 89 (2d Cir. 2007) ............................................................ 26

*Torres-Negron v. J & N Records, LLC,*
    504 F.3d 151 (1st Cir. 2007) ...................................................... 9-10

*United States v. Arnold,*
    533 F.3d 1003 (9th Cir. 2008) .................................................. 21, 22

*United States v. Barrow,*
    448 F.3d 37 (1st Cir. 2006) ............................................................ 17

*United States v. Blue,*
    No. 1-14-CR-244-SCJ, 2015 WL 1519159 (N.D. Ga. April 1, 2015) .................. 19

*United States v. Braks,*
    842 F.2d 509 (1st Cir. 1988) ...................................................... 18, 24

*United States v. Cano*,
   No. 16-CR-01770-BTM, 2016 WL 6920449 (S.D. Cal. Nov. 23, 2016) .............................. 19

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) .............................................................................. 25

*United States v. Escarcega*,
   685 Fed. App'x 354 (5th Cir. 2017) ............................................................... 18-19

*United States v. Feiten*,
   No. 15-20631, 2016 WL 894452 (E.D. Mich. Mar. 9, 2016) .................................... 17, 19, 26

*United States v. Flores-Montano*,
   541 U.S. 149 (2004) ....................................................................................... 16, 20

*United States v. Gonzales*,
   658 F. App'x 867 (9th Cir. 2016) .......................................................................... 19

*United States v. Hampe*,
   No. CR. 07-3-B-W, 2007 WL 1192365 (D. Me. Apr. 18, 2007) ........................................ 17

*United States v. Hernandez*,
   No. 15-CR-2613-GPC, 2016 WL 471943 (S.D. Cal. Feb. 8, 2016) ...................................... 19

*United States v. Hernandez-Salazar*,
   813 F.2d 1126 (11th Cir. 1987) ............................................................................ 20

*United States v. Hilliard*,
   289 F. App'x 239 (9th Cir. 2008) ......................................................................... 21

*United States v. Ickes*,
   393 F.3d 501 (4th Cir. 2005) ......................................................................... 21, 22

*United States v. Kolsuz*,
   185 F. Supp. 3d 843 (E.D. Va. 2016) ............................................................ 18, 24-25

*United States v. Lopez*,
   No. 13-CR-2092 WQH, 2016 WL 7370030 (S.D. Cal. Dec. 20, 2016) .............................. 19

*United States v. McAuley*,
   563 F. Supp. 2d 672 (W.D. Tex. 2008), *aff'd*, 420 F. App'x 400 (5th Cir. 2011) ........... 21, 26

*United States v. Mendez*,
   240 F. Supp. 3d 1005 (D. Ariz. 2017) .................................................................. 19

*United States v. Molina-Gomez*,
   781 F.3d 13 (1st Cir. 2015) ........................................................................ 18, 25

*United States v. Molina-Isidoro*,
   No. EP-16-CR-1402-PRM, 2016 WL 8138926, — F.3d — (W.D. Tex. Oct. 7, 2016).......... 18

*United States v. Montoya de Hernandez*,
    473 U.S. 531 (1985) ................................................................................ *passim*

*United States v. Ramos*,
    190 F. Supp. 3d 992 (S.D. Cal. 2016) ................................................. 19

*United States v. Ramsey*,
    431 U.S. 606 (1977) ......................................................................... 16, 20

*United States v. Saboonchi*,
    48 F. Supp. 3d 815 (D. Md. 2014) ...................................................... 19

*United States v. Seljan*,
    547 F.3d 993 (9th Cir. 2008) .............................................................. 21

*United States v. Stewart*,
    729 F.3d 517 (6th Cir. 2013) ........................................................ 24, 26

*Wash. Legal Found. v. Mass. Bar Found.*,
    993 F.2d 962 (1st Cir. 1993) ............................................................. 6-7

## Statutes

6 U.S.C. § 202 ............................................................................................ 2

8 U.S.C. § 1357(a)(3) ................................................................................ 3

19 U.S.C. § 482 .......................................................................................... 3

19 U.S.C. § 507 ........................................................................................ 21

19 U.S.C. § 1305 ........................................................................................ 3

19 U.S.C. § 1461 ........................................................................................ 3

19 U.S.C. § 1496 ........................................................................................ 3

19 U.S.C. § 1499 ........................................................................................ 3

19 U.S.C. § 1581 ........................................................................................ 3

19 U.S.C. § 1582 ........................................................................................ 3

19 U.S.C. § 1583 ........................................................................................ 3

19 U.S.C. § 1589a ...................................................................................... 3

19 U.S.C. § 1595a(c)(3) ............................................................................. 3

31 U.S.C. § 5317 ........................................................................................ 3

Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified at 6 U.S.C. §§ 111, 203, 251) ................... 2

## Legislative Material

1 Cong. Ch. 5, 1 Stat. 29 (1789) ............................................................... 3

**Administrative and Executive Materials**

15 C.F.R. § 758.7 ................................................................................................. 3

19 C.F.R. § 148.21 ............................................................................................. 20

19 C.F.R. § 161.2 ............................................................................................... 2

19 C.F.R. § 162.6 ............................................................................................... 3

19 C.F.R. § 162.7 ............................................................................................... 3

**Other Authorities**

Dep't of Homeland Security, *CBP Releases Statistics on Electronic Device Searches* (April 11, 2017),

    https://www.cbp.gov/newsroom/national-media-release/cbp-releases-statistics-electronic-device-searches-0 ........................................................................................... 11

Dep't of Homeland Security, "*Summary of Laws and Regulations Enforced by CBP*" (Mar. 8, 2014),

    https://www.cbp.gov/trade/rulings/summary-laws-enforced/us-code .....................................3

## **INTRODUCTION**

This Court should dismiss the Amended Complaint because Plaintiffs lack standing and fail to state a claim.  Plaintiffs argue that the Government violates the Fourth Amendment by searching and detaining electronic devices at the international border without probable cause or a warrant.  They also allege that the Government violates the First Amendment by searching electronic devices at the border absent a warrant.  However, Plaintiffs lack standing to seek the forward-looking injunctive and declaratory relief claimed in the Amended Complaint.  In addition, Plaintiffs fail to state a claim upon which relief can be granted.

In sum, Plaintiffs ask this Court to rewrite Fourth Amendment border-search jurisprudence.  Established law from numerous courts, including this one, holds that searches of electronic devices may be conducted at the international border without probable cause.  Ignoring this case law, Plaintiffs ask this Court to rule that the Government lacks authority to search the content "that electronic devices contain, absent a warrant supported by probable cause," even when such devices are possessed by persons seeking to enter or exit the United States.  Am. Compl. ¶ 169, ECF No. 7.  No court has imposed such a requirement, and for good reason: the Government has plenary authority to search persons and possessions at the border; probable cause is not required for any border search (even highly invasive bodily searches at the border require only reasonable suspicion).  Accordingly, this Court should reject Plaintiffs' attempt to upend the border search doctrine and impose significant limits on the Government's ability to know what, and who, is coming in and out of the country.

# BACKGROUND

## I.   LEGAL BACKGROUND

Defendants in this action include Kirstjen Nielsen,[1] Secretary of the U.S. Department of Homeland Security; Kevin McAleenan, Acting Commissioner, U.S. Customs and Border Protection; and Thomas Homan, Acting Director, U.S. Immigration and Customs Enforcement. The U.S. Department of Homeland Security ("DHS"), through its components U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"), is responsible for administering the customs and immigration laws of the United States, securing the borders, and inspecting individuals and items that seek entry into and departure from the United States.  *See* 6 U.S.C. § 202(2), (4) & (6); *see also id.* § 211 (setting forth CBP's responsibilities).[2]

One of DHS' most important responsibilities is "preventing the entry of terrorists and the instruments of terrorism into the United States." *Id*. § 202(1); *see also id.* § 111(b)(1)(A).  DHS is also responsible for enforcing hundreds of laws and regulations, including, among others, those addressing immigration, currency and financial transactions, customs, commerce and trade, copyrights and trademarks, narcotics, chemical and biological weapons, guns, and other items.[3]

---

[1] The Secretary of Homeland Security has been automatically substituted per Federal Rule of Civil Procedure 25(d).

[2] The Homeland Security Act of 2002 created the Department of Homeland Security as an executive department of the United States and transferred to the Secretary of Homeland Security, among other things, the functions of the United States Customs Service and the immigration enforcement functions previously performed by the Immigration and Naturalization Service. Pub. L. No. 107-296 §§ 101, 403, 441, 116 Stat. 2135 (2002) (codified at 6 U.S.C. §§ 111, 203, 251).

[3] In addition to DHS's direct responsibility for enforcing the United States' immigration laws, customs laws, and activities relating to agricultural inspections at the border, 6 U.S.C. § 202, DHS and its components also enforce a variety of laws on behalf of other federal agencies.  *See*

In light of these numerous, varied, and important responsibilities, CBP officers have exercised broad authority to inspect travelers and their baggage as they cross the international border for more than two centuries.[4]

In August 2009, CBP and ICE issued policies on their longstanding authority to search and inspect electronic devices at the border. *See* Am. Compl. ¶ 58. The policies relate exclusively to border searches of electronic devices—that is, searches of travelers' electronic devices performed at the international border, or its functional equivalent, by properly authorized CBP officers or ICE agents. *See* Border Searches of Electronic Devices, ICE Directive No. 7-6.1, ¶¶ 1.1, 8.1(1) (Aug. 18, 2009); *see also* Border Search of Electronic Devices Containing Information, CBP Directive No. 3340-049, ¶ 1 (Aug. 20, 2009). Border searches of electronic devices are "a crucial tool for detecting information [relating to] terrorism, narcotics smuggling, and other national security matters; alien admissibility; contraband including child pornography; laundering monetary instruments; violations of copyright or trademark laws; and evidence of embargo violations or other import or export control laws." ICE Directive ¶ 4; *see also* CBP

---

*generally* 19 C.F.R. § 161.2; Dep't of Homeland Security, "*Summary of Laws and Regulations Enforced by CBP*" (Mar. 8, 2014), https://www.cbp.gov/trade/rulings/summary-laws-enforced/us-code (last visited Dec. 13, 2017). These same laws and regulations are investigated and prosecuted by ICE.

[4] *See* Act of July 31, 1789, 1 Cong. Ch. 5, 1 Stat. 29; *see also, e.g.*, 19 U.S.C. § 482 (describing the authority to search vehicles and persons); *id*. § 1461 (describing the authority to search "[a]ll merchandise and baggage" brought into the United States); *id*. § 1496 (noting the authority to search baggage of persons entering the United States); *id*. § 1499(a), (c) (describing the authority to examine and detain imported merchandise); *id*. § 1305 (describing the authority to search potentially obscene material); *id*. § 1581 (describing the authority to board vessels and search); *id*. § 1582 (noting the authority to detain and search "all persons coming into the United States from foreign countries"); *id*. § 1583 (describing the authority to examine outbound mail), 1589a (general law enforcement authority); *id*. § 1595a(c)(3) (describing the authority to detain merchandise introduced contrary to law); 8 U.S.C. § 1357(a)(3) (describing the authority of immigration officers to board and search); 31 U.S.C. § 5317 (describing the authority regarding search and forfeiture of monetary instruments); 15 C.F.R. § 758.7; 19 C.F.R. §§ 162.6 and 162.7.

Directive, ¶ 1.  These policies have been carefully crafted to provide the Government, through

DHS and its components, with the tools necessary to secure the nation's border, while striving to

protect personal privacy.

The policies permit CBP officers to search, analyze, and review information contained in

electronic devices "with or without individualized suspicion," subject to the guidelines set forth

in the policy directives and any other applicable laws.  *See* ICE Directive ¶ 6.1; *see also* CBP

Directive ¶ 5.1.2.  The policies recognize that it is not always possible to complete the search of

a traveler's electronic device while he or she waits at the border.  *See* ICE Directive ¶ 6.1; *see

also* CBP Directive ¶ 5.3.1.  ICE policy requires its agents "to complete the search of [a]

detained electronic device[], or copies of information therefrom, in a reasonable time given the

facts and circumstances of the particular search."  ICE Directive ¶ 8.3(1); *see also* CBP Directive

¶ 5.3.1 (explaining that "[a]n [o]fficer may detain electronic devices . . . for a brief, reasonable

period of time to perform a thorough border search").  The ICE Directive provides that such

searches are generally to be completed within thirty calendar days of the date of the detention,

unless circumstances exist that warrant more time and appropriate authorization is obtained.  *Id.*

## II.      FACTUAL BACKGROUND

All eleven Plaintiffs allege various facts concerning the search and in some cases

detention of their electronic devices at the border.  All Plaintiffs aver that their devices were

examined when they arrived in the United States upon traveling from an international

destination.  Seven (Sidd Bikkannavar, Jeremie Dupin, Aaron Gach, Isma'il Kushkush, Diane

Maye, Zainab Merchant, Mohammed Akram Shilby) allege only that their electronic devices,

such as cellphones or computers, were briefly examined for a period of a few minutes to a few

hours, during which time these Plaintiffs waited at the border, and after which time the devices were immediately returned to them.

The remaining four Plaintiffs (Ghassan and Nadia Alasaad, Suhaib Allababidi, Matthew Wright) allege that their electronic devices were detained by Government officials at the border, after their entry into the United States.  Plaintiffs concede that both Mr. Allababidi and Mr. Wright refused to unlock their devices for inspection.  Am. Compl. ¶¶ 79, 148.   The other two Plaintiffs, Ghassan and Nadia Alasaad, allege that one of their phones was unlocked, and that they provided CBP officials with the password for the other phone.  Plaintiffs concede that CBP officials allowed the Alasaads to "remain" at the checkpoint "while their phones were searched," but upon the request of Nadia Alasaad that a male officer not search her phone, CBP officials informed them that it would take "two hours for a female officer to arrive, and then more time to search the phone."  Am. Compl. ¶ 70.  The Alasaads then decided to voluntarily "depart[] without their phones."  *Id*.

The Amended Complaint alleges that Matthew Wright's devices were returned to him "56 days after" they were initially detained.  *Id*. ¶ 154.  Concerning Suhaib Allababidi, the Amended Complaint states that "[t]he government" returned one of his phones "more than two months" after it was initially detained, and that "CBP still has not returned the locked phone to him." *Id*. ¶ 80.  Finally, the Amended Complaint avers the Alasaads' phones were returned "[a]pproximately fifteen days" after their initial detention.  *Id*. ¶ 72.

## III.    PLAINTIFFS' CLAIMS AND PRAYER FOR RELIEF

The Amended Complaint sets forth three challenges.  In their first cause of action, all Plaintiffs allege that Defendants violate the Fourth Amendment "by searching the content that electronic devices contain, absent a warrant supported by probable cause . . . ."  *Id*. ¶ 169.

Similarly, in their second cause of action, all Plaintiffs claim that the First Amendment is violated by officials "searching electronic devices that contain expressive content and associational information, absent a warrant supported by probable cause . . . ." *Id.* ¶ 171. Finally, the third cause of action, asserted only as to the Alasaads, Allababidi and Wright Plaintiffs, avers that the Fourth Amendment is violated by officials' "confiscating travelers' electronic devices . . . absent probable cause . . . ." *Id*. ¶ 173.

Plaintiffs do not assert any claim for monetary damages concerning the past search or detention of their electronic devices, and instead seek only future declaratory and injunctive relief.  Plaintiffs seek a declaration that the search and "confiscation" of Plaintiffs' and all travelers' electronic devices "absent probable cause," constitutes a violation of the Fourth Amendment.  *Id*. at Prayer for Relief ¶¶ (A)-(B), (D)-(E).  Plaintiffs also seek an order enjoining Defendants from searching or "confiscating" travelers' electronic devices "absent probable cause."  *Id.* at Prayer for Relief ¶¶ (C), (G).  Finally, Plaintiffs make further demands that the Court declare that "confiscating" the particular devices in this case for an "unreasonable duration" constituted a Fourth Amendment violation, enjoin Defendants to return Plaintiff Allababidi's phone, and enjoin Plaintiffs to "expunge all information gathered from, or copies made of, the contents of Plaintiffs' electronic devices . . . ."  *Id.* at Prayer for Relief ¶¶ (C), (F)-(I).

## ARGUMENT

## I.     STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A Court should accept all "well-pleaded" facts as true and draw reasonable inferences in favor of Plaintiff.  *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st

Cir. 1993).  However, complaints that rest on "bald assertions" and "unsupportable conclusions" should be dismissed.  *See Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir. 2011) (citation omitted); *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009).

## II.    SUMMARY OF ARGUMENT

Plaintiffs lack Article III standing, and as a consequence their claims should be dismissed.  First, Plaintiffs assert a general risk of injury from the possibility that their electronic devices may be searched in the future.  But such a speculative fear of future harm does not satisfy the constitutional injury requirement, particularly here, where, as the Amended Complaint itself notes, border search statistics establish that there is a miniscule chance of any future border search of Plaintiffs' electronic devices.  Second, Plaintiffs make a conclusory assertion that Defendants have retained certain information from their electronic devices.  Yet, the Amended Complaint, with one exception, contains no factual allegations that would support such a conclusion, and as a result, nearly all Plaintiffs fail to demonstrate standing on that basis as well, and all Plaintiffs further fail to establish redressability.  Third and finally, Plaintiffs claim a vague harm from their future speech being "chilled."  Am. Compl. ¶ 162.  But such a subjective "chill" cannot constitute Article III injury when it is based solely on speculation that a travelers' electronic device may be searched in the future.  *Id*. ¶ 46.

In any event, Plaintiffs' claims lack legal merit.  Plaintiffs set forth three similar claims concerning the search and detention of travelers' electronic devices.  First, Plaintiffs claim that any electronic device border search requires probable cause and a warrant to satisfy the Fourth Amendment.  This claim lacks merit, as numerous courts, including this one, have held that a border search of an electronic device requires neither a warrant nor probable cause.  Next, Plaintiffs urge that such searches absent a warrant also violate the First Amendment, because

electronic devices can contain "expressive content and associational information."  Am. Compl. ¶ 171.  This request for a broad First Amendment carve-out to the border search doctrine has been roundly rejected by the two circuit courts that have addressed it, and this Court should reach the same result.  Finally, Plaintiffs argue that the "confiscation" of travelers' electronic devices absent probable cause "after travelers leave the border," violates the Fourth Amendment. *Id.* ¶ 173.  But this requirement, which finds no support in the case law, would likely preclude the government from being able to conduct such border searches in the first place.  Given the absence of any basis in law for Plaintiffs claims, Defendants respectfully move that the Amended Complaint be dismissed.

## III.   PLAINTIFFS LACK STANDING AND THEIR CLAIMS SHOULD BE DISMISSED

Article III of the Constitution confines federal courts to adjudicating only "actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citation omitted), *abrogated on other grounds by*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). "No principle is more fundamental to the judiciary's proper role in our system of government than [this] constitutional limitation . . . ." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  One aspect of this case-or-controversy limitation is the requirement of standing.  The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To meet this burden, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct of the defendant; and (3) a likelihood that a favorable ruling will redress the alleged injury. *Id.* at 560–61.  An injury in fact is a judicially cognizable injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citation omitted).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a

'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013)).   "[A]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted).

By limiting the judicial power to instances where specific individuals have suffered concrete injuries, standing requirements "serve[] to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* at 408.   A court's standing inquiry should, therefore, be "especially rigorous when reaching the merits of the dispute" would compel it "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* (citation omitted).

Plaintiffs base their claim to Article III standing on three types of purported injury.   First, Plaintiffs state that they all "face a likelihood of future injury," because when Plaintiffs travel internationally they will "be subject to" Defendants' policies and practices, and are therefore allegedly at risk of a future device border search.   Am. Compl. ¶ 156.   Second, Plaintiffs claim they "are suffering the ongoing harm" of Defendants retaining (a) content copied from their devices or records reflecting content observed during searches, (b) content copied from their cloud-based accounts, (c) their social media identifiers "and/or," (d) their device passwords. Am. Compl. ¶ 157.   Finally, Plaintiffs contend that they "will be chilled from exercising their First Amendment rights of free speech and association[.]"   Am. Compl. ¶162.[5]   None of these

---

[5] Plaintiffs separately claim that Suhaib Allababidi has standing because Defendants are still allegedly in possession of his cellphone.   Am. Compl. ¶ 158.   However, Mr. Allababidi's phone was in fact returned to him on December 13, 2017, as indicated by the signed acknowledgement attached hereto as Exhibit A.   Because the return of the phone does not implicate any of Plaintiffs' legal claims, and only the existence of injury, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007) (citation omitted).   And since Plaintiff can no longer claim that he is "suffering the ongoing harm of the confiscation of his device," nor that he

alleged "injuries" meets the constitutional requirement of an actual or imminent injury-in-fact sufficient to establish standing, rendering this court without jurisdiction to proceed.

### A.   Plaintiffs' Vague Averment of Possible Future Injury Does Not Set Forth Any Harm that Is Certainly Impending

Plaintiffs' first alleged basis of standing, that they may be subject to a future electronic device border search or detention, does not establish a certainly impending injury.  As Plaintiffs appear to recognize, past alleged injuries cannot provide standing to seek future injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]") (citation omitted).  Rather, such a controversy exists only when a plaintiff establishes the existence of a "real and immediate threat" that he or she will be subjected to the same conduct that precipitated the litigation.  *Id.* at 103.  Plaintiffs cannot establish that there is a "real and immediate threat" that their devices will be searched if they now choose to cross the border.  *See id.*

Here, Plaintiffs allege that they are at "great risk" of the "search and seizure of their devices" simply because they have a general intention to travel internationally in the future.  Am. Compl. ¶ 156(c).  The basis of Plaintiffs' alleged "great risk" appears to be their citation of certain statistics concerning the number of electronic devices searched at the border by CBP, namely a press release stating that CBP searched the electronic devices of 14,993 arriving international travelers in the first half of fiscal year 2017.  *Id.* ¶ 38.  But Plaintiffs conveniently ignore that according to the same press release, such searches constitute 0.008 percent of the

---

is "at imminent risk of suffering a device search," Am. Compl. ¶ 158, this assertion of injury has been mooted.  *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation."); *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) ("A federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner that undermines any one of the three pillars on which constitutional standing rests: injury in fact, causation, and redressability.").

approximately 189.6 million travelers who arrived in the United States during that time. *See id.*;

Dep't of Homeland Security, *CBP Releases Statistics on Electronic Device Searches* (April 11,

2017), available at https://www.cbp.gov/newsroom/national-media-release/cbp-releases-

statistics-electronic-device-searches-0 (last visited Dec. 13, 2017).  And while Plaintiffs claim

that these searches are "rapidly growing," in fact the cited statistics show that in the first six

months of fiscal year 2017 the number of arrivals processed with an electronic device search

remained steady, with 2,560 such searches in October of 2016 and 2,595 searches in March of

2017.  *Id.*  This is a minuscule percentage of the total number of arriving travelers in those

months, 32,248,121 and 34,103,063, respectively.  *Id.*

　　Plaintiffs do not allege that they are at any greater risk for a future electronic device

search than any other member of the traveling public.  Accordingly, Plaintiffs are asking this

Court to find a certainly impending injury on the basis that there is only a slight chance that their

electronic devices could be searched when they travel internationally in the future.  Simply

stating such a far-fetched claim disposes of it.

　　Further, the Supreme Court has "repeatedly reiterated that 'threatened injury must be

certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury'

are not sufficient."  *Clapper*, 568 U.S. at 409 (citation omitted).  "Although imminence is

concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to

ensure that the alleged injury is not too speculative for Article III purposes—that the injury is

certainly impending."  *Id*.  Thus, as the First Circuit recently explained, "[s]peculation" that a

government actor "might in the future take some other and additional action detrimental to"

Plaintiffs, is "not an adequate substitute for a claim of specific present objective harm or a threat

of specific future harm."  *Reddy v. Foster*, 845 F.3d 493, 503 (1st Cir. 2017) (citation omitted);

*see also Abidor v. Napolitano*, 990 F. Supp. 2d 260, 274 (E.D.N.Y. 2013) ("[D]eclaratory relief is not appropriate because it is unlikely that . . . plaintiff[] will have his electronic device searched at the border . . . ."). The vanishingly small chance of a future electronic device border search comes nowhere close to the requirement of a certainly impending injury necessary to support standing.

There are two additional reasons why Plaintiffs cannot establish standing on this ground. Plaintiffs allege no facts that differentiate their future risk of a device search from that of the general public. Such a generalized grievance is accordingly inappropriate for adjudication. *See Defs. of Wildlife*, 504 U.S. at 573-74 ("A plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy."); *Conservation Law Found. of New England, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir. 1991) (holding that injury based on "increased threat to public health and natural resources" was insufficient, and "has to be more particularized").

Second, Plaintiffs fail to allege any specific plans or dates for future travel, at which time a device border search could occur. In *Lujan v. Defenders of Wildlife*, the Court held that a vague "intent[]" to travel, resulting in possible future injury "is simply not enough." 504 U.S. at 564. That is, "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*; *see also Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 326 (1st Cir. 2009) (affirming dismissal where only "nebulous 'some day' intentions" were alleged). Here, Plaintiffs have alleged nothing more than a vague intent to travel internationally at some point in the future. Such speculative allegations again fall far short of the "requirement of imminent injury." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

**B.     Plaintiffs Fail to Allege Facts to Support Their Injury that Defendants are Retaining Plaintiffs' Information**

Plaintiffs also claim that they are "suffering the ongoing harm of CBP and ICE retaining content copied from their devices," their "cloud-based accounts," their social media identifiers, "and/or" their device passwords.  Am. Compl. ¶ 157.  Yet, for only one of the eleven Plaintiffs, Matthew Wright, does the Amended Complaint even allege that "CBP retained the information it extracted from [his] devices," accompanied by a few additional assertions supporting that claim.  Am. Compl. ¶ 155 (alleging evidence that "CBP extracted data from Mr. Wright's devices" and there was no CBP documentation provided reflecting the "destruction" of such data).  No other such allegations are made for any other Plaintiffs.  "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action.  Neither conclusory assertions nor unfounded speculation can supply the necessary heft."  *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).  Accordingly, ten of the Plaintiffs have not set forth "sufficient factual matter to plausibly demonstrate [their] standing" on this ground.  *Id.*

In addition, none of the Plaintiffs, including Matthew Wright, can show standing on this basis because they cannot establish redressability.  The final component of the standing requirement, redressability, mandates that the "plaintiff must show that a favorable resolution of her claim would likely redress the professed injury."  *Katz v. Pershing*, LLC, 672 F.3d 64, 72 (1st Cir. 2012).  Here, Plaintiffs' request that the Government expunge all information gathered from Plaintiffs' electronic devices (Am. Compl. Prayer for Relief ¶ (I)), would not likely result from a favorable resolution of their claims.  The government's use of "evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."  *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998).  In this case, Plaintiffs do not allege that the

- 13 -

Government is using or retaining information in a manner that violates the Constitution, and accordingly provide this Court with no plausible basis on which to order exclusion, much less expungement.  *See Herring v. United States*, 555 U.S. 135, 141-42 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.").

### C.    Plaintiffs Cannot Show an Article III Injury Predicated on a Future Subjective Chill of their Speech

Finally, Plaintiffs appear to allege that as a result of electronic device border searches, their speech will be "chilled" in the future, potentially providing an injury in support of their standing.  Am. Compl. ¶ 162.  However, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).  In its *Clapper* decision, the Supreme Court rejected the argument that plaintiffs could demonstrate an Article III injury based on an "objectively reasonable likelihood" that their communications would be "intercepted . . . at some point in the future."  568 U.S. at 410.  Such a standard, the Court held, "is inconsistent with our requirement that 'threatened injury must be certainly impending to constitute injury in fact.'"  *Id.*

As set forth above, Plaintiffs cannot show that a future search of their electronic devices is "certainly impending," as, according to the Amended Complaint, travelers are subject to a 0.008 percent chance of a device border search.   Thus, just as in *Clapper*, it is purely "speculative whether the Government will imminently target communications to which [Plaintiffs] are parties."  568 U.S. at 411.  A claim of harm founded on a subjective "chill,"

which is in turn based upon an entirely conjectural threat of future searches, cannot suffice to show Article III injury.[6]

Even more fundamentally, Plaintiffs do not claim that any such "chill" has actually occurred. The notion that Plaintiffs "will," at some undefined point in the future, "be chilled" with respect to unspecified communicative and associational activities, cannot come within the ambit of a concrete and certainly impending Article III injury. Am. Compl. ¶ 162. And even if Plaintiffs had refrained from certain speech activities, such self-inflicted harm would similarly fail to support standing. *See Clapper,* 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). In sum, Plaintiffs cannot show a certainly impending injury based upon a future chill of their speech, and as a consequence, cannot demonstrate standing on this basis.

## IV. PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON FIRST OR FOURTH AMENDMENT GROUNDS

To the extent this Court has jurisdiction, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs' broad-based attack on the Government's border search authority finds no support in caselaw or constitutional principles.[7]

---

[6] In addition, the Amended Complaint vaguely avers that Plaintiffs, "and the many other travelers who cross the United States border every year with electronic devices, will be chilled from exercising their First Amendment rights . . . ." Am. Compl. ¶ 162. Such an allegation, admitting that Plaintiffs are no different than "many other travelers," is a conceded improper generalized grievance, rather than a particularized harm required to demonstrate standing. *Id*.; *see Defs. of Wildlife*, 504 U.S. at 573-74.

[7] The Amended Complaint does not focus its challenge on the specific legality of the past searches and detentions alleged by individual Plaintiffs. Rather, the Amended Complaint mounts a broad facial challenge to searches of "electronic devices . . . absent a warrant," and the "confiscation" of "travelers' electronic devices." Am. Compl. ¶¶ 169, 171, 173; *see also id.* ¶ 7 ("In this lawsuit, Plaintiffs challenge: (a) searches by CBP and ICE of travelers' electronic

### A.    Electronic Device Searches at the Border Require Neither a Warrant Nor Probable Cause

In their first cause of action, Plaintiffs contend that Defendants violate the Fourth Amendment anytime they perform a border search of the "content that electronic devices contain, absent a warrant supported by probable cause . . . ."  Am. Compl. ¶ 169.  This argument has been rejected consistently by courts.  It should be rejected here as well.

The Government's authority to search persons and items is at its "zenith" at the border. *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004).  As a result, although searches must be reasonable, "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior."  *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).  At the border, "the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity."  *Flores-Montano*, 541 U.S. at 153.  For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152-53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).  Accordingly, the Supreme Court has held that "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable

---

devices . . .; and (b) prolonged seizures, *i.e.*, confiscation of travelers' electronic devices . . . .").  Thus, all of the claims alleged in the Complaint appear to be facial challenges to Defendants' policies concerning the search and detention of electronic devices at the border.  The Supreme Court clarified that while facial challenges under the Fourth Amendment are not categorically barred, such a claim must show the illegality of all "searches that the law actually authorizes . . . ."  *City of Los Angeles, Cal. v. Patel*, 135 S. Ct. 2443, 2451 (2015).  Regardless of how Plaintiffs' claims are styled, they lack merit and should be dismissed.

suspicion, probable cause, or warrant . . . ."  *Montoya de Hernandez*, 473 U.S. at 538; *see also*

*United States v. Barrow*, 448 F.3d 37, 41 (1st Cir. 2006) (same).

This very Court has recognized the Government's broad authority to conduct

suspicionless searches of electronic devices at the border.  In *House v. Napolitano*, No. CIV. A.

11-10852-DJC, 2012 WL 1038816 at *5 (D. Mass. Mar. 28, 2012) (Casper, J.), this Court

explained that only where a "highly intrusive search," such as body cavity or strip search, is

conducted at the border, might "some level of suspicion" be required.  (citation omitted).

However, unlike those searches, which may require reasonable suspicion, this Court held that

"the search of one's personal information on a laptop computer . . . does not invade one's dignity

and privacy in the same way" as those invasive searches which "require the government to assert

some level of suspicion." *Id.* at *7.  Further, "[c]arving out an exception for information

contained on electronic devices would provide travelers carrying such devices with greater

privacy protection than others who choose to carry the same type of personal information in hard

copy form." *Id.* at *8.  Thus, this Court concluded that reasonable suspicion was not required to

conduct a border search of electronic devices. *Id.*  Similar holdings abound. *See, e.g., United*

*States v. Feiten*, No. 15-20631, 2016 WL 894452, at *4 (E.D. Mich. Mar. 9, 2016) (holding that

four-hour border search of laptop did not require reasonable suspicion); *United States v. Hampe*,

No. CR. 07-3-B-W, 2007 WL 1192365, at *4 (D. Me. Apr. 18, 2007) (holding no reasonable

suspicion required for laptop border search).

This Court need not even rely on the full extent of its past holding to dismiss Plaintiffs'

claim here that a border search of an electronic device requires a "warrant supported by probable

cause," Am. Compl. ¶ 169, an even higher threshold than the reasonable suspicion requirement

rejected in *House*. *See Navarette v. California*, 134 S. Ct. 1683, 1688 (2014) (explaining that

reasonable suspicion requires "considerably less" suspicion than a "preponderance of the evidence" and "'obviously less' than is necessary for probable cause") (citation omitted).

The Supreme Court held that even in the context of a "humiliating" search and detention for the purposes of detecting smuggling in a traveler's "alimentary canal," only reasonable suspicion is required. *Montoya de Hernandez*, 473 U.S. at 544. The First Circuit reiterated that in the particular context of uniquely invasive border examinations, such as strip searches and body cavity searches, only reasonable suspicion is necessary to comport with the Fourth Amendment. *See United States v. Braks*, 842 F.2d 509, 512-13 (1st Cir. 1988). In light of such precedent, it is clear that "the highest protection available for a border search is reasonable suspicion." *United States v. Kolsuz*, 185 F. Supp. 3d 843, 858–59 (E.D. Va. 2016); *accord United States v. Molina-Gomez*, 781 F.3d 13, 20 (1st Cir. 2015) (assuming that it was required, reasonable suspicion justified 22-day border search and detention of electronic devices for physical examination). Courts have therefore consistently rejected any claim that a border search of a device, or indeed any other border search, requires probable cause and a warrant. *See, e.g. Kolsuz*, 185 F. Supp. 3d. at 858-59; *United States v. Molina-Isidoro*, No. EP-16-CR-1402-PRM, 2016 WL 8138926, --- F.3d ---, at *7 (W.D. Tex. Oct. 7, 2016) (noting that "the Court has not been able to find a single case 'that stands for the proposition that more than reasonable suspicion is required for a nonroutine border search or seizure of any kind or extent'") (citation omitted).

Plaintiffs may argue that *Riley v. California*, 134 S. Ct. 2473 (2014), cited in the Amended Complaint, imposes a warrant requirement in the border-search context. Am. Compl. ¶ 6. This argument is without merit and has been repeatedly rejected. *See, e.g., United States v.*

*Escarcega*, 685 Fed. App'x 354 (5th Cir. 2017).[8]  Indeed, *Riley* itself noted that its holding was limited to the search incident to arrest context, stating that while "the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone."  134 S. Ct. at 2492; *accord United States v. Gonzales*, 658 F. App'x 867, 870 (9th Cir. 2016) ("*Riley* did not address border searches, and expressly acknowledged" that phone searches may be justified under other exceptions).

The *Riley* Court specifically evaluated the two general justifications for the arrest exception, namely that an object on an arrestee could be used to harm an arresting officer, or could contain evidence at risk of destruction.  The Court accordingly inquired whether exempting cellphones from the warrant requirement in that circumstance would "untether the rule from the justifications underlying the [arrest] exception[.]"  *Riley*, 134 S. Ct. at 2485.  The Court answered the question in the affirmative, since the risk of harm or evidence destruction are not usually present "when the search is of digital data."  *Id.*

The border search doctrine, by contrast, serves different and broader purposes, namely protecting the nation's core sovereignty in controlling the entry and exit of persons and property in order to safeguard national security and prevent threats to the citizenry.  "[T]he United States,

---

[8] *See also United States v. Mendez*, 240 F. Supp. 3d 1005, 1008 (D. Ariz. 2017); *United States v. Ramos*, 190 F. Supp. 3d 992, 1002 (S.D. Cal. 2016) (holding that "it is important to recognize that [*Riley*] did not modify or undercut the paradigmatic border search exception"); *United States v. Saboonchi*, 48 F. Supp. 3d 815, 817-18 (D. Md. 2014); *United States v. Lopez*, No. 13-CR-2092 WQH, 2016 WL 7370030, at *5 (S.D. Cal. Dec. 20, 2016) (holding that *Riley* "does not narrow the limits of a border search"); *United States v. Cano*, No. 16-CR-01770-BTM, 2016 WL 6920449, at *2 (S.D. Cal. Nov. 23, 2016); *Abidor v. Johnson*, No. 10-CV-4059 (ERK), 2016 WL 3102017, at *6 (E.D.N.Y. June 2, 2016); *Feiten*, 2016 WL 894452 at *6 (holding that warrantless border search of electronic device is "utterly consistent" with justifications for border search exception); *United States v. Hernandez*, No. 15-CR-2613-GPC, 2016 WL 471943, at *3 n.2 (S.D. Cal. Feb. 8, 2016); *United States v. Blue*, No. 1-14-CR-244-SCJ, 2015 WL 1519159 at *2 (N.D. Ga. April 1, 2015).

as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153.  For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152-53 (quoting *Ramsey*, 431 U.S. at 616).

Unlike with searches incident to arrest, the purposes underlying the border search doctrine apply in full force to searches of electronic media.  Such devices can contain contraband (such as child pornography), information regarding the inadmissibility of prohibited goods or persons, or material (such as classified information, malware, or export-controlled material) that, if illicitly transferred beyond our borders, could pose a direct threat to our national security.  And the greater storage capacity of electronic devices enables greater harm through the smuggling of, for example, large amounts of classified data or contraband.  Because Plaintiffs cannot plausibly contend that searching electronic devices would "untether" the border search exemption from its traditional justifications, *Riley* cannot be read as overturning or even undermining the Government's authority to conduct warrantless searches of electronic devices at the border.

Thus, *Riley* does not support Plaintiffs' novel argument that the Government should be required to obtain a warrant anytime it searches an electronic device at the border.[9]

---

[9] The Amended Complaint repeatedly avers that certain Plaintiffs disclosed their device passwords to Government officials.  The relevance of these allegations is unclear, as Plaintiffs do not contest or even mention such disclosure in any of their legal claims.  Even if Plaintiffs were to somehow contest the disclosure of device passwords, any such claim would be without merit. *See, e.g.,* 19 C.F.R. § 148.21 (stating that customs officials shall be permitted to "open and examine all baggage" brought into the United States, and if the owner refuses to open the baggage "it shall be opened by the Customs officer"); *United States v. Hernandez-Salazar*, 813 F.2d 1126, 1131 (11th Cir. 1987) (finding no Fourth Amendment violation where agents "forced

**B.      Plaintiffs Cannot State a Claim for a First Amendment Violation Based Upon a Border Search of "Expressive Materials"**

Plaintiffs next claim that the First Amendment is violated whenever a border search is conducted upon "electronic devices that contain expressive content and associational information, absent a warrant supported by probable cause . . . ." Am. Compl. ¶ 171.  Even if Plaintiffs somehow had standing to seek forward-looking relief based on a future, unspecified "chill" of their speech, this claim should still be dismissed.

The circuit courts to have considered this issue, the Fourth and the Ninth, have both rejected the idea that a warrantless device border search is invalid merely if "it involved the search of expressive material," such that courts would need to "carve out a First Amendment exception to the border search doctrine." *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005); *see also United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008); *United States v. Seljan*, 547 F.3d 993, 1011–12 (9th Cir. 2008) (Callahan, J., concurring); *United States v. Hilliard*, 289 F. App'x 239, 239–40 (9th Cir. 2008).  As the Fourth Circuit held, "the ramifications of accepting [this] First Amendment argument would be quite staggering." *Ickes*, 393 F.3d at 506.  That is, creating a newfound First Amendment exception would:

> (1) protect terrorist communications "which are inherently 'expressive'"; (2) create an unworkable standard for government agents who "would have to decide — on their feet — which expressive material is covered by the First Amendment"; and (3) contravene the weight of Supreme Court precedent refusing to subject government action to greater scrutiny with respect to the Fourth Amendment when an alleged First Amendment interest is also at stake.

---

. . . open" locked suitcase in border search for contraband); *United States v. McAuley*, 563 F. Supp. 2d 672, 678 (W.D. Tex. 2008), *aff'd*, 420 F. App'x 400 (5th Cir. 2011) ("Locks are usually present on luggage and briefcases, yet those items are subject to 'routine' searches at ports of entry all the time."); *see also* 19 U.S.C. § 507 (authorizing customs officers "to demand the assistance of any person in making any arrest, search, or seizure authorized by any law enforced or administered by customs officers, if such assistance may be necessary").

*Arnold*, 533 F.3d at 1010 (quoting *Ickes*, 393 F.3d at 506-08).  These "staggering" consequences are sought here, as Plaintiffs demand a declaration that Defendants violate the First Amendment anytime a search is conducted of "travelers' electronic devices, absent a warrant," and similarly request an injunction against "searching electronic devices absent a warrant supported by probable cause . . . ."  Am. Compl. Prayer for Relief ¶¶ (A), (C).  The Court should reject these requests and "hold that the border search doctrine is not subject to a First Amendment exception."  *Ickes*, 393 F.3d at 507.

While this Court found the First Amendment claims in *House* were sufficient to survive a motion to dismiss, the facts of that case are easily distinguished.  In that case the "complaint allege[d] that [plaintiff] was not randomly stopped at the border; it allege[d] that he was stopped and questioned solely to examine the contents of his laptop that contained expressive material and investigate" plaintiff's association to a particular organization.  *House*, 2012 WL 1038816 at *10.  This Court found "pertinent" to the First Amendment claim the Government's alleged "motivation to search and retain [plaintiff's] devices" specifically "for their material concerning" particular expressive activities.  *Id*.  This Court accordingly differentiated the plaintiff in *House* from the circuit court rulings above because the complaint alleged "that the agents targeted [plaintiff] and stopped him at the airport specifically because" of a specific association.  *Id*. at *11.

In total contrast, the 42-page Amended Complaint here makes no allegation that any of the eleven plaintiffs have been or will be targeted because of specific expressive or associational activities that could be protected by the First Amendment.[10]  Rather, the Amended Complaint

_____

[10] Indeed, in the sole factual allegation concerning the First Amendment claim, Plaintiffs state only that Jeremie Dupin and Isma'il Kushkush had their phones searched, which allegedly

states that Plaintiffs are no different from "many other travelers," Am. Compl. ¶ 162, who enter the United States with electronic devices each year, and are subject to the general authority and policies of Government officials upon arriving at the border.   Thus, unlike the unique allegations in *House*, claiming that a traveler's specific expression and associations were targeted by Government officials, Plaintiffs here bring a far weaker claim: that a warrant is required whenever defendants search "electronic devices that contain expressive content and associational information . . . ." Am. Compl. ¶ 171.[11]   It is precisely this wholesale First Amendment carve-out to the border search doctrine that was rejected by both the Fourth and Ninth Circuits, and the result here should be no different.

### C.   Plaintiffs Cannot Show a Fourth Amendment Violation in the Detention of Electronic Devices at the Border

Plaintiffs' third and final claim fares no better.   The third cause of action alleges that the Defendants violate the Fourth Amendment in "confiscating travelers' electronic devices for the purpose of effectuating searches of those devices after travelers leave the border, absent probable cause . . . ." Am. Compl. ¶ 173.   This "confiscation" claim appears generally coextensive with Plaintiffs' first cause of action, claiming that probable cause and a warrant is required whenever an electronic device is searched at the border.   Indeed, the third cause of action contests the detention and search of a device anytime "after travelers leave the border[.]"   *Id*.   The same arguments made with respect to the first cause of action therefore apply equally here.

---

contained "work product," along with other contents, but nowhere do Plaintiffs allege that these border searches were targeted in any way at particular expression.   Am. Compl. ¶ 46.

[11] The *House* decision also featured a thorough discussion of the plaintiff's separate freedom of association claim under the First Amendment.   A similar discussion here is unnecessary because Plaintiffs here fail to cite any association affected by border device searches or the nature of any harm to associational freedoms.   *Cf. House*, 2012 WL 1038816 at *12 (noting allegations that seizure of plaintiff's records there would "deter support for the organization in the future and chill the associational rights of the [group] and its supporters").

Just as probable cause is not needed to justify a border search, where a device is detained after a traveler leaves the border, probable cause is similarly not be required to justify a detention necessary to effectuate that search.  Put simply, where the government has authority to search an item at the border, it has authority to detain that item as necessary to accomplish the search.  *See, e.g., United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (holding the fact "[t]hat the government had to travel twenty miles and wait twenty-four hours to perform the same search that they could have done the previous day had the proper equipment been present at the airport does not transform a routine border search into an extended border search for which reasonable suspicion is required").  In other words, whether the traveler departs the border before a search is completed, or the precise location of the search, does not heighten the "invasiveness or intrusiveness associated with any particular type of search," such that even reasonable suspicion is required.[12]  *Braks,* 842 F.2d at 511.

Yet Plaintiffs again contend that an even greater standard, "probable cause," Am. Compl. ¶ 173, is required to detain an electronic device for any length of time once a traveler leaves the border.  Plaintiffs thus urge that a higher standard of suspicion be applied to the detention of a laptop than that required for the detention of a woman to investigate the smuggling of drugs in her "alimentary canal."  *See Montoya de Hernandez*, 473 U.S. at 541.  This contention lacks merit, as "the highest protection available for a border search is reasonable suspicion."  *Kolsuz,*

_____

[12] In *House* this Court held that the claims concerning the specific duration of the seizure of plaintiff's devices survived a motion to dismiss because the Court could not determine whether the detention "was reasonably related in scope to the circumstances that may have justified it at the border."  2012 WL 1038816 at *9.  By contrast, Plaintiffs here challenge any detention of "travelers' electronic devices, . . . absent probable cause . . . ."  Am. Compl. ¶ 173.  Applying the Court's analysis, Plaintiffs would have to show that any detention after the traveler departs the border would not be "reasonably related" to the circumstances at issue.  Plaintiffs cannot make such a showing.

185 F. Supp. 3d at 859; *see also Molina-Gomez*, 781 F.3d at 21 (assuming without deciding that reasonable suspicion was required, the court held that reasonable suspicion justified 22-day border detention of laptop and PlayStation to conduct physical search); *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (holding that reasonable suspicion justified "forensic examination" of traveler's computer). Thus, because the detention of an electronic device in order to complete a border search does not require probable cause, regardless of whether the device's owner departs the border before the search is completed, Plaintiffs' third cause of action should be dismissed.

The Amended Complaint briefly mentions three apparent sub-parts to the third cause of action. All three of these sub-parts are framed as violations that occur "[w]hen CBP and ICE officers confiscate electronic devices pursuant to their policies and practices . . . ." Am. Compl. ¶ 56. It is unclear whether these allegations are intended to function as stand-alone claims, but if so, they are similarly baseless.

First, Plaintiffs aver that "these confiscations are not justified at their inception when they are affected absent probable cause." *Id.* ¶ 56(a). This simply restates Plaintiffs' general allegations in the third cause of action, and should be rejected for the reasons set forth above.

Next, Plaintiffs aver that "these confiscations are excessive in scope," because officers confiscate not just locked devices, "but also the unlocked devices they are able to search and that they sometimes have already searched." *Id.* ¶ 56(b). Generously reading this claim in line with Plaintiffs' other causes of action, (namely that probable cause and/or a warrant is required for detentions of unlocked electronic devices) this argument fails for the same reasons set forth above. Officials are broadly permitted to search and detain electronic devices without particularized suspicion, regardless of whether the devices are password-protected. *See House*,

2012 WL 1038816 at *8 ("It is the level of intrusiveness of the search that determines whether the search is routine, not the nature of the device or container to be searched."); *see also McAuley*, 563 F. Supp. 2d at 678 ("A password on a computer does not automatically convert a routine search into a non-routine search.  A password is simply a digital lock.").

Apart from having no legal basis, such a claim ignores the obvious realities concerning such inspections.  Plaintiffs assume that Government officials should be able to immediately perform whatever search is necessary upon any type of unlocked electronic device, at any border crossing, regardless of the circumstances.  Yet border agents may not be able to conduct a search of an unlocked device immediately for any number of reasons, such as a lack of proper equipment, *Stewart*, 729 F.3d at 526, difficulty with software, *Feiten*, 2016 WL 894452 at *1, or password-protected files.  The argument that, absent probable cause, border agents may not detain unlocked electronic devices for the purpose of conducting a necessary search is thus both unprecedented and threatens to preclude the effective search of any such unlocked device if it were not immediately possible at the border.  *See House,* 2012 WL 1038816 at *8 ("[T]he level of suspicion required to conduct a search of information carried by a person should not be based on the form in which that information is kept and presented at the border.").

Finally, Plaintiffs contend that device "confiscations are excessive in duration" where the detention is "unreasonable in relation to the time actually needed to search the devices."  Am. Compl. ¶ 56(c).  Notably, the Supreme Court has "consistently rejected hard-and-fast time limits" in evaluating the reasonableness of border searches and emphasized that "'common sense and ordinary human experience must govern over rigid criteria.'"  *Montoya de Hernandez*, 473 U.S. at 543 (citation omitted); *see also Tabbaa v. Chertoff*, 509 F.3d 89, 100 (2d Cir. 2007) (same).

Even if the Court were to liberally read this allegation as challenging CBP and ICE "policies and practices" because they permit detention of devices for a period "unreasonable in relation to the time actually needed," such a claim would lack any factual basis.  Am. Compl. ¶ 56(c).  Far from authorizing unreasonable detentions, the ICE Directive explicitly states that "Special Agents are to complete the search of detained electronic devices . . . in a reasonable time given the facts and circumstances of the particular search."  ICE Directive ¶ 8.3(1).  Similarly, the CBP Directive maintains that "[a]n [o]fficer may detain electronic devices . . . for a brief, reasonable period of time to perform a thorough border search.  The search may take place on-site or at an off-site location, and is to be completed as expeditiously as possible."  CBP Directive ¶ 5.3.1.  Plaintiffs thus lack any basis to complain that Defendants' policies permit detention of electronic devices for an unreasonable period of time in relation to the time needed to search the device, when in fact they prohibit such practices.  Without a viable legal claim concerning Defendants' policies on this ground, Plaintiffs' cause of action should be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,                                          Dated: December 15, 2017


CHAD A. READLER
Acting Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

DIANE KELLEHER
Assistant Director, Federal Programs Branch

*/s/ Michael L. Drezner*
MICHAEL L. DREZNER
Trial Attorney, U.S. Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8470
Michael.L.Drezner@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on December 15, 2017.

*/s/ Michael Drezner*
Michael Drezner