UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

GHASSAN ALASAAD, et al,

                    Plaintiffs,        Civil Action
                                       No. 17-11730-DJC
V.
                                       July 16, 2018
ELAINE DUKE, et al.,                   2:41 p.m.

                    Defendants.
_____


TRANSCRIPT OF SCHEDULING CONFERENCE

BEFORE THE HONORABLE DENISE J. CASPER

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA  02210


DEBRA M. JOYCE, RMR, CRR, FCRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA  02210
joycedebra@gmail.com

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:

 3    ADAM SCHWARTZ, ESQ.
      SOPHIA COPE, ESQ.
 4    Electric Frontier Foundation
      815 Eddy Street
 5    San Francisco, CA 94109
      415-436-9333
 6
      ESHA BHANDARI, ESQ.
 7    ACLU Foundation
      125 Broad Street 18th Floor
 8    New York, NY 10004
      212-549-2500
 9
      FOR THE DEFENDANTS:
10
      MICHAEL DREZNER, ESQ.
11    Department of Justice – Federal Programs Branch
      20 Massachusetts Ave. NW
12    Washington, DC 20001
      202-514-4505
13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Denise J. Casper, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on July 16, 2018.)

THE CLERK:  Civil action 17-11730, Alasaad v. Duke.

Would counsel please state your name for the record.

MR. SCHWARTZ:  Adam Schwartz from the Electronic Frontier Foundation for plaintiffs.

THE COURT:  Good afternoon, counsel.

MS. BHANDARI:  Esha Bhandari from the ACLU for the plaintiffs.

MS. COPE:  Sophia Cope from the Electronic Frontier Foundation for the plaintiff.

THE COURT:  Good afternoon.

MR. DREZNER:  Michael Drezner on behalf of the defendants.

THE COURT:  Good afternoon, counsel.

MR. DREZNER:  Good afternoon.

THE COURT:  Counsel, I know we're here for an initial scheduling conference.  I'm obviously familiar with the allegations in this case from the motion to dismiss hearing.

Counsel, I've had a chance to review the parties' joint statement and the proposed discovery schedule.

1          Before I turn to that, just a few, well, confirmations

2     of things I understand from your filing.

3          The first is I understand the parties don't consent to

4     trial before a magistrate judge, so I'm assuming the matter is

5     going to proceed in this session at this juncture.

6          MR. SCHWARTZ:  Yes, your Honor.

7          THE COURT:  Counsel, obviously in every case -- and I

8     recognize the relief sought in this case is a little bit

9     different than the typical civil case -- I certainly always

10    inquire about settlement prospects largely to see if there's

11    anything the Court can do to assist in productive discussions

12    at this point.

13         Counsel, I think there was an indication that the

14    plaintiffs had made a demand.  Have you --

15         MR. SCHWARTZ:  Yes, your Honor, the plaintiffs did

16    make a settlement demand.  We'd be happy to describe it if that

17    would be helpful.

18         THE COURT:  Well, I guess -- is it fair to say it was

19    not agreed to, counsel?

20         MR. DREZNER:  Yes, your Honor.

21         THE COURT:  Meaning, at this juncture, given the

22    demand and the response, do the parties think it would be

23    fruitful at all to engage in mediation or ADR?

24         MR. SCHWARTZ:  So the plaintiffs are always happy to

25    try to settle or negotiate anything.  My estimation is that

1    what the plaintiffs want, which is a warrant to conduct these

2    searches, or at the very minimum probable cause or reasonable

3    suspicion, is not going to be reasonable to the defendants

4    because it's contrary to their policies and practices, but I'd

5    let the government speak to that.

6          THE COURT:  Fair at this point, counsel?

7          MR. DREZNER:  Yes.  I don't think it would be

8    productive at this stage.  I think if they would change their

9    settlement demand, anything could be on the table, but at this

10   point, we don't think it would be a productive use of time.

11         THE COURT:  So, counsel, I sort of gathered as much

12   from your differing views on the scope of discovery, but I

13   thought I would inquire, as I always do.

14         Counsel, obviously I would expect that counsel

15   throughout this case may be talking to each other about

16   resolution of this case.  If at some point both parties think

17   it would be productive to have the benefit of one of the

18   magistrate judges solely for the purposes of mediation or to

19   craft some jointly agreed to relief, you can feel free to reach

20   out to Ms. Hourihan about scheduling that; and certainly I'll

21   inquire when I see you next.

22         Counsel, just to turn to the substance of your joint

23   statement about discovery and the scope of discovery.  I take

24   it from the parties' summaries of their positions that the

25   disagreement seems to be less about the timing and sequence or

1   even the length of intervals during the discovery and

2   dispositive motion schedule but more about the scope of

3   discovery; is that fair to say, counsel?

4           MR. SCHWARTZ:  Yes, your Honor.

5           THE COURT:  Okay.

6           MR. DREZNER:  I think, your Honor, given whether any

7   discovery is warranted in the case we may have additional

8   concerns or positions to relate on timing, but I think in

9   general, that's correct.

10          THE COURT:  Okay.  So, counsel -- and I've read the

11   joint statement.  I think I have a sense of the parties'

12   competing positions, but why don't -- if you each want to add

13   something to lay that out a little bit further for me, you can.

14          Counsel.

15          MR. SCHWARTZ:  Yes, your Honor, thank you.

16          The plaintiffs' view is that we would like to start

17   taking discovery as soon as we can.  And we would narrow it in

18   scope to just two issues, one being the government's interests

19   and whether or not the warrantless, suspicionless searches

20   actually advance those interests, which is part of the merits

21   determination; and on standing we want to expand both the

22   continuing harm from the past searches as well as the risk of

23   future searches.

24          This Court's order denying the motion to dismiss

25   identified gaps in the factual record, so it identified limited

1    and unclear, quote-unquote, record about some of the government

2    interests and identified one of the plaintiffs' standing claims

3    as possibly being borne out in discovery.

4            There is a suggestion in the joint statement that we

5    delay discovery to allow more time for negotiated stipulations,

6    and we went have spent weeks, both parties --

7            THE COURT:  And this is a stipulation potentially

8    about the scope of discovery?

9            MR. SCHWARTZ:  Stipulation on actual facts.

10           THE COURT:  Oh, okay.

11           MR. SCHWARTZ:  So I think there are literally dozens

12   of potential facts that have gone back and forth in three sets

13   from the parties.  And we commit to continuing in good faith to

14   pursuing that; we think, however, in best-case scenario the

15   stipulations on facts will not obviate the need for discovery,

16   so there's no cause for delay, and that the most efficient

17   thing to do is move forward both with discovery and the

18   possible stipulations.

19           Again, in short we ask for discovery limited in time

20   to four months and limited in scope to the issues we've set

21   forth.

22           THE COURT:  Counsel, just so I understand what you see

23   as the scope of discovery as to policies and practices, is this

24   in regards -- at least I remember one of the points that I

25   think was made in the course of the motion to dismiss about

1   what is the risk of contraband or electronic contraband coming

2   over the border.  When you say "policies and practices," what

3   do you mean specifically?

4         MR. SCHWARTZ:  Well, one item is exactly what you just

5   said.  We would like to discover what is the prevalence of

6   digital contraband entering the country at points of entry in

7   comparison to the digital contraband that is coming into the

8   country on the internet.  We view that as part and parcel of

9   the larger theme we want to discover which is whether or not

10  the suspicionless, warrantless searches and confiscations

11  actually advance the government's interest.  So we want to get

12  the government's evidence that that is the case.  We want to

13  take interrogatories and a 30(b)(6) deposition about that.

14        We'd like to know about, on a related theme, their

15  current practices of getting a warrant and what their basis is

16  for alleging that having to get a warrant would cause harm.

17        We're interested in their directions and training for

18  officers in how to exercise these powers, which, again, we

19  think will shed light on whether or not their interests are

20  actually being advanced.

21        Again, what this all feeds into is the balancing

22  that's required of whether or not the warrantless search is

23  justified.  We view the privacy interest as well established as

24  a matter of law, and we want to explore as a factual matter the

25  government's side of this justification.

1          THE COURT:  And standing was -- counsel, give me some

2     examples of that.  Again, I remember one argument in regards to

3     whether or not the plaintiffs, because some of them had been

4     stopped before, if that would lead them to be more likely to be

5     stopped in the future.  But what are other examples of what the

6     discovery would uncover?

7          MR. SCHWARTZ:  So we have two theories of standing,

8     both of which your Honor addressed in the order denying the

9     dismissal.

10         The first is ongoing harm from the past searches.  And

11    what that means is they looked in our devices, our clients'

12    devices, and they copied information and retain it to this day,

13    either in 1s and 0s of raw data, or officers observing with

14    their eyes what it says in a device and writing down on a

15    keyboard what it says.  And we're entitled to an order of

16    expungement, an injunction to delete all that information, as

17    the discovery is literally what information does the government

18    have from those devices.

19         The second theory of standing is that we are at risk

20    of future searches.  So one piece of discovery would be about

21    aggregate data showing how often these searches and

22    confiscations are happening to the general public over a period

23    of time.

24         And then, finally, as this Court said a moment ago,

25    our theory is that our clients, in fact, are more likely than

1   other members of the public to be subjected to searches.

2          And so what we want to discover is the next time one

3   of our clients is standing before an agent, either at primary

4   or secondary screening, what is that agent going to see about

5   our clients?  Is it going to say they've been searched before?

6   Is it going to say they've done something that is suspicious or

7   problematic that will trigger the next search?

8          And the flip side of that coin is what are the

9   government's policies and practices of how agents would react

10  to the information about our clients that we're trying to

11  discover.  Our theses is that if an agency's that they have

12  been searched in the past, the agent is more likely to search

13  them again in the future.  That theory, of course, is the

14  holding in the District Court decision in Tabbaa in the Western

15  District of New York.  We want discovery to bear that out.

16          THE COURT:  Counsel, I'll let you respond to both of

17  those -- both areas of the proposed discovery.

18          MR. DREZNER:  Thank you, your Honor.

19          I think as we laid out in the JSR, this is a pure

20  question of law that plaintiffs have put before you, whether

21  the search and confiscation, as they put it, of electronic

22  devices is constitutional under the Fourth and First

23  Amendments.  Pure questions of law simply require no factual

24  discovery to resolve.  This issue frequently comes up in the

25  criminal context, and indeed, in their cases there is no

1   intense fact discovery.  That's what plaintiffs are proposing,

2   but Courts are able to resolve those issues, nonetheless, as

3   recently as --

4       THE COURT:  Well, is that true where the standards

5   require a balancing of certain factors?

6       MR. DREZNER:  I mean, I think the question under the

7   Fourth Amendment is generally the same, regardless of the

8   context in which it arises.

9       THE COURT:  Well, usually the Court, though, has to,

10  for example, in a motion to suppress has to balance the factors

11  about whether or not someone's statement was taken in violation

12  of a Fourth Amendment which involves evidence about the

13  circumstances under which that statement was taken.  Why would

14  this be different?

15      MR. DREZNER:  Certainly there can be somewhat of a

16  record in a criminal context, but the question that they answer

17  in those cases is the same one here, which is, was it a Fourth

18  Amendment violation to search someone's cell phone without a

19  warrant?  And courts have said generally no.  And they don't

20  need fact discovery into the deep recesses into what the

21  government's interests are, how often they are actually

22  advanced, how often contraband is found.  Rather, courts are

23  able to analogize to past cases, take judicial notice of

24  readily ascertainable facts, and make a firm ruling.

25      We believe there's simply no need to have discovery,

1   rather, we can proceed most efficiently to briefing summary

2   judgment in this case on the clear legal issues that are before

3   your Honor.

4        THE COURT:  Counsel, do you want to address the

5   standing issue at all?

6        MR. DREZNER:  Certainly.

7        I think as my brother discussed, he said, Well, you

8   know, this will get into I think very sensitive issues of law

9   enforcement procedures and practices.  And so I think as the

10  court in Clapper noted, it's not the government's burden to

11  reveal to plaintiff if they are a surveillance priority, if

12  they're going to be surveilled in the future.  I think that's a

13  clear analog to this case where plaintiffs are clearly going to

14  be asking for very sensitive pieces of information.  And

15  obviously I can't predict the future, but I would hazard that

16  will result in some disputes, possibly future motion practice

17  all in a case that presents a pure question of law under the

18  Constitution, indeed, a facial constitutional challenge.

19       So simply put, any discovery here is just not

20  proportional to the needs of the case.

21       THE COURT:  Counsel, why couldn't at least some of

22  those issues be addressed by a protective order which isn't

23  uncommon in civil cases or even some criminal cases?

24       MR. DREZNER:  I think certainly protective orders will

25  likely be necessary here and would certainly be appropriate.

1    However, as the Court in Clapper pointed out, a protective

2    order there doesn't solve the problem because you're still

3    revealing to the person or at least giving them a strong hint

4    as to the answer to the question are they under surveillance.

5    What are the government's sort of sensitive information that is

6    at stake, even if there is a protective order at issue.

7            If I could turn to the stipulations --

8            THE COURT:  Sure.

9            MR. DREZNER:  -- for a moment.  Plaintiff is correct.

10   We've I think both been engaging in good faith for a long time

11   trying to hash out the dozens of stipulations that we can.

12   However, those negotiations are obviously sensitive and

13   ongoing.  We're trying to coordinate between three different

14   agencies, 11 plaintiffs, and create a set of facts that we can

15   all agree to in the hope that it will either obviate the need

16   for discovery or significantly narrow the categories that the

17   plaintiffs seek discovery on.  To have them propound discovery

18   requests on us while those negotiations are ongoing will

19   confuse things and make things far more difficult.  It won't be

20   clear to defendants which sort of discovery requests may be

21   obviated by which interrogatory, whether it would be fruitful

22   to continue negotiating or not.  So that's why we've asked in

23   the JSR for a period of 30 days to finalize any stipulations

24   that we can, create a clear universe of whatever plaintiff is

25   thinks appropriate for discovery, and allow defendants to

1    respond to those clear proposals rather than have this sort of

2    amorphous schedule that we have going forward here.

3              THE COURT:  Thank you.

4              Counsel, I appreciate the proposals on each side.

5    Counsel, I want to give it a little more thought.  I appreciate

6    that the parties on both sides have been endeavoring to come up

7    with stipulations if only to narrow any need for discovery.

8              I think to the extent that plaintiff is seeking any

9    discovery here, I think it has been significantly narrowed,

10   which I think is appropriate.  I do -- the motion to dismiss

11   order that I issued is still somewhat fresh in my mind, and I

12   do recall at least some of the issues being issues that

13   couldn't necessarily be answered by the pleadings.  So I think

14   if I allow a scope of discovery here, it's appropriately

15   limited to the issues that were identified in the motion to

16   dismiss.

17             Counsel, what I'm going to do is I'm going to take

18   this matter under advisement.  I expect that I'll issue an

19   order on scheduling before the end of this week.

20             Counsel, are you also working at the same time on a

21   proposed protective order, or, counsel, is there one coming?

22             MR. SCHWARTZ:  We have not yet begun work on a

23   protective order.

24             THE COURT:  I guess, counsel, like I said, I

25   anticipate that by Friday I'll be able to issue an order here.

1          Counsel, I would say that to the extent that counsel

2     also wants to begin to work on a jointly proposed protective

3     order, I would think about that.  I get that there might be

4     portions of the discovery that might be appropriate to be

5     subject to a protective order.

6          Counsel, with all that said, is there anything else I

7     should address with you while you're live before me now?

8          Counsel, plaintiffs' side?

9          MR. SCHWARTZ:  Not from the plaintiffs.

10         THE COURT:  From the defense?

11         MR. DREZNER:  I think the only thing we would add,

12    your Honor, is that to the extent that we are unable to reach

13    agreement as to certain stipulations, we would not necessarily

14    want to foreclose those issues from being the subject of any

15    discovery in the future, i.e., we are hopeful that we can reach

16    agreement on a number of different points, but if that doesn't

17    come to fruition, we would not want to be foreclosed because

18    they weren't exactly before your Honor at this moment.

19         THE COURT:  I'm not sure I'm following you, counsel.

20         MR. DREZNER:  Defendants said sort of in reservation,

21    Here are two topics that we might want to take discovery on --

22         THE COURT:  You mean the plaintiffs did, right.

23         MR. DREZNER:  Yes, but the defendants did as well on

24    page 9, said to the extent that this Court thinks any discovery

25    is warranted.  I would just note specifically plaintiffs'

1    standing is obviously a subject in the case; and while we're

2    endeavoring to reach certain stipulations on the issue of

3    standing, I just wanted to add that that may be an issue

4    defendants would be interested in seeking discovery on as well,

5    so we're not foreclosed from that the future.

6           THE COURT:  I'm not sure how that would work.

7    Meaning, aren't we talking about the scope of discovery, and I

8    don't think there was suggestion on either side that it be

9    bifurcated in any manner.

10          So, meaning, what is it you would be seeking on the

11   defense side from plaintiffs on the issue of standing?

12          MR. DREZNER:  Well, your Honor, this gets back to sort

13   of the issue of stipulations as they intersect with discovery.

14   So we can't be certain what we would seek because we aren't

15   certain what we will agree to or not agree to in terms of

16   stipulations.  So I think that the chicken sort of has to come

17   before the egg.  We have to agree on our stipulations or

18   disagree and then decide which topics are appropriate subjects

19   for discovery on either side.

20          THE COURT:  Counsel, I guess I -- I understand your

21   point to some degree, and I'll tell you -- like I said, I want

22   to think about this more.  I'll tell you my inclination as

23   you've been arguing today.  I'm inclined to give the parties

24   some finite period of time to see if they can complete their

25   agreement as to certain stipulations.  I think there's probably

1    interest in efficiency and perhaps public interest in doing

2    that.

3            I don't think that's -- I would give the parties a

4    deadline to do that.

5            I then intend that the scope of discovery, which even

6    by the plaintiffs' estimation, should be limited.  I think

7    plaintiffs refer to four months as to certain designated

8    topics.

9            I guess what I'm trying to say, counsel, is I don't

10   envision having discovery, having summary judgment motions, and

11   then having one side or the other seek further discovery.

12   That's what I wanted to make sure you weren't suggesting.  I

13   understand the defense's position about trying to reach

14   stipulations before there is a schedule about discovery.  Okay.

15           So, counsel, with that said, I will take the matter

16   under advisement, but thank you to both sides.

17           Thank you.

18           (Court adjourned at 3:01 p.m.)

19                     - - - - - - - - - - - -

20                          CERTIFICATION

21           I certify that the foregoing is a correct transcript

22   of the record of proceedings in the above-entitled matter to

23   the best of my skill and ability.

24   /s/Debra M. Joyce_____          August 15, 2018_____
     Debra M. Joyce, RMR, CRR, FCRR      Date
25   Official Court Reporter