# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GHASSAN ALASAAD, NADIA ALASAAD, SUHAIB ALLABABIDI, SIDD BIKKANNAVAR, JÉRÉMIE DUPIN, AARON GACH, ISMAIL ABDEL-RASOUL AKA ISMA'IL KUSHKUSH, DIANE MAYE, ZAINAB MERCHANT, MOHAMMED AKRAM SHIBLY, AND MATTHEW WRIGHT,

Plaintiffs,

v.

KIRSTJEN NIELSEN, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY; KEVIN MCALEENAN, COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, IN HIS OFFICIAL CAPACITY; AND RONALD VITIELLO, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, IN HIS OFFICIAL CAPACITY,

Defendants.

Civil Action No. 17-cv-11730-DJC

Hon. Denise J. Casper

## **DECLARATION OF PLAINTIFF ZAINAB MERCHANT**

1. I am a writer and a graduate student in international security and journalism at Harvard University. I am also the founder and CEO of *ZRights Studios*, a multimedia website that publishes content on current affairs, politics, and culture.

2. I am a U.S. citizen.

3. I currently reside in Toronto, Ontario.

4. In March 2017, I traveled from Orlando, Florida to Toronto, Ontario to visit my uncle. On March 5, 2017, I went to the Toronto airport for my flight home to Orlando. I carried a locked Samsung laptop and a locked Samsung smartphone.

5. At a U.S. customs preclearance station at the Toronto airport, I was directed to a secondary inspection area. There, U.S. Customs and Border Protection ("CBP") officers took my laptop out of my sight.

6. CBP officers told me to turn over my smartphone. I wear a headscarf in public in accordance with my religious beliefs, and I did not want to turn over the phone because it contained pictures of me without my headscarf that I did not want officers to see. It also contained information and communications related to my multimedia website.

7. I told the CBP officers that I would turn over the phone, but would not unlock it. A CBP officer told me that if I gave them the password, they would look through the phone quickly, but if I did not give them the password, they would detain the phone indefinitely.

8. I said that I was traveling alone, and that if I did not have a phone I would have no means of communicating. I also said that I needed the phone for my work and studies. A CBP officer reiterated that I could choose to unlock the phone, or have it seized indefinitely.

9. In tears, I unlocked my phone. I also provided the password to unlock my laptop.

10. I was coerced into unlocking my phone and providing the password to my laptop.

11. CBP officers then began questioning me about the purpose of my trip, my religious affiliation, and my blog. They specifically asked about an article I had written on my blog that described a previous border crossing experience.

12. After approximately two hours, officers gave me my phone and laptop and permitted me to leave the U.S. customs preclearance area. My laptop and phone had been out of my sight for approximately one and a half hours.

13. When the CBP officers returned the phone to me and I unlocked it, the Facebook application was open to the "friends" page. It had not been open to that page when I had given up the phone.

14. On April 5, 2018, I traveled from London, United Kingdom to Orlando, Florida. I carried a locked Samsung Note 8 smartphone.

15. As my family and I deplaned at the Orlando airport, CBP officers were waiting for us on the jetway and directed us to a secondary inspection area. The officers questioned me and my husband at length and told us to turn over our smartphones. My husband and I turned over our phones but did not unlock them.

16. The officers took the phones to an area out of my sight for approximately 10 minutes.

17. A CBP officer then returned with the phones and, speaking to my husband, directed him to unlock the phones, including the individual applications on the phones that were locked. The officer threatened to detain the phones for a longer period if my husband declined to unlock them. My husband reluctantly complied and unlocked both phones, including individual applications on my phone.

18. I did not consent to the detention and search of my phone, which contained pictures of me without my headscarf on that I did not want officers to see.

19. The CBP officers coerced my husband into unlocking my phone and providing the password to my locked applications.

20. The CBP officer again took the phones to an area out of my sight.

21. After approximately 45 minutes, officers returned the phones to me and my husband and proceeded to check our luggage. The officers then permitted our family to leave the customs inspection area.

22. On July 7, 2018, I traveled from Dubai, United Arab Emirates to Fort Lauderdale, Florida. I carried a locked Samsung Note 8 smartphone.

23.  Upon arrival at the Fort Lauderdale airport, I was directed to a secondary inspection area, where a male CBP officer questioned me about a range of topics for approximately one hour. The officer then escorted me to a waiting area.

24.  A female CBP officer came to me in the waiting area and told me to unlock my smartphone and turn it over, which I did because I felt I had no choice. The officer took the phone to an area out of my sight. After approximately 40 minutes, the officer returned my phone to me.

25.  CBP officers then directed me to a separate inspection area, where they conducted a thorough search of my luggage. They then permitted me to leave the customs area.

26.  On September 9, 2018, I traveled from Toronto, Ontario to Orlando, Florida. I carried a locked Samsung Note 8 smartphone.

27.  I was directed to secondary inspection at the CBP preclearance station at the Toronto airport.

28.  A CBP officer directed me to turn over my smartphone. I told the officer that I did not consent to the search and that my device contained attorney-client privileged communications.

29.  My phone contained privileged communications with Hugh Handeyside, my counsel in this case.

30.  Nonetheless, the CBP officer took my device and searched it. The CBP officer ordered me to unlock multiple password-protected applications on my phone in order to access their contents. I made clear that I did not consent to the unlocking of each application. I also informed the CBP officer that my email and text message applications contained communications protected by the attorney-client privilege.

31.  The officer nonetheless opened the applications, and I saw her viewing the contents of email and text message communications between me and my counsel in this case, Mr. Handeyside.

32. I spent approximately one hour in secondary inspection before I was permitted to leave and continue my travel.

33. The search of my device and my personal photos and apps as well as intimate messages made me feel violated, bare, and dehumanized.

34. I regularly travel internationally for personal and professional reasons, and carry electronic devices with me when I do so.

35. To the best of my knowledge, since January 1, 2013, I have returned to the United States from an international trip at least 12 times. Seven of those instances of returning to the United States from an international trip took place since January 1, 2017.

36. At the current time, I intend to continue traveling internationally for professional and personal reasons.

37. I plan to travel from my current residence in Toronto, Canada to Boston, Massachusetts periodically from now through May 2020 in order to complete my graduate studies.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 26, 2019

Zainab Merchant