# EXHIBIT 26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GHASSAN ALASAAD, NADIA ALASAAD, SUHAIB ALLABABIDI, SIDD BIKKANNAVAR, JÉRÉMIE DUPIN, AARON GACH, ISMAIL ABDEL-RASOUL AKA ISMA'IL KUSHKUSH, DIANE MAYE, ZAINAB MERCHANT, MOHAMMED AKRAM SHIBLY, AND MATTHEW WRIGHT,<br><br>        Plaintiffs,<br><br>        v.<br><br>KIRSTJEN NIELSEN, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY; KEVIN MCALEENAN, COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, IN HIS OFFICIAL CAPACITY; AND RONALD VITIELLO, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, IN HIS OFFICIAL CAPACITY,<br><br>        Defendants. | Civil Action No. 17-cv-11730-DJC<br><br>Hon. Denise J. Casper |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO
## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Defendants, by and through undersigned counsel submit their Objections and Responses to Plaintiffs' First Set of Interrogatories To All Defendants.

1

**INTERROGATORIES**

**INTERROGATORY NO. 1**

Identify and describe all of the government interests that are purportedly served by the Defendants' challenged policies and practices on border device searches and confiscations.

Defendants' Response: Defendants object to this interrogatory as vague and overly broad, as it seeks an identification and description of "all of the government interests" that are "purportedly served" by the challenged policies and practices. "Government interests" is not defined here, nor does it have any commonly accepted definition. Similarly, it is unclear what is meant for an interest to be "purportedly served" by a challenged policy or practice. In addition, the term "confiscations" is undefined and has no commonly accepted meaning in this context. Defendants further object to this interrogatory to the extent it calls for a legal conclusion and analysis of the government interests served by the border search exception to the probable cause and warrant requirements of the Fourth Amendment, as recognized in binding legal precedents. Subject to these objections, Defendants respond as follows:

As made clear in CBP Directive 3340-049A and ICE Directive 10044.1, border searches of electronic devices are conducted in furtherance of customs, immigration, law enforcement, and homeland security responsibilities and to ensure compliance with customs, immigration, and other laws that Defendants are authorized to enforce and administer.

These searches are part of Defendants longstanding practice and are essential to enforcing the law at the U.S. border and to protecting border security. They are a crucial tool for detecting evidence relating to terrorism and other national security matters, human and bulk cash smuggling, contraband, and child pornography. They can also reveal information about financial and commercial crimes, such as those relating to copyright, trademark, and export control violations. They can be vital to risk assessments that otherwise may be predicated on limited or no advance information about a given traveler or item, and they can enhance critical information sharing with, and feedback from, elements of the federal government responsible for analyzing terrorist threat information. Finally, searches at the border are often integral to a determination

2

of an individual's intentions upon entry and provide additional information relevant to admissibility under the immigration laws.

Pursuant to Fed. R. Civ. P. 33(d), Defendants will also produce documents in response to this interrogatory. Subsequent to the production of those documents, Defendants will identify the Bates numbers which correspond to this response.

**INTERROGATORY NO. 2**

Identify and describe any and all facts or evidence that show that any of the government interests identified in response to Interrogatory No. 1 are actually served by the challenged policies and practices.

Defendants' Response: Defendants object to this interrogatory as vague and overly broad to the extent it references "any and all" facts or evidence that show that "any" government interests are served by the challenged policies and practices, and because the terms are undefined. Defendants further object to this interrogatory because the burden of providing such information is not proportional to the needs of the case. Read literally, this interrogatory could be interpreted to require information and production of records detailing each instance in which a border search of an electronic device supported DHS's mission to promote border security and to enforce the customs, immigration, and other laws that DHS is authorized to enforce or administer at the border. Defendants further object to this interrogatory to the extent it calls for a legal conclusion and analysis of the government interests served by the border search exception to the probable cause and warrant requirements of the Fourth Amendment, as recognized in binding legal precedents. Defendants further object to this Request to the extent it seeks information protected by the law enforcement privilege. Subject to these objections, Defendants respond as follows:

Pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents in response to this interrogatory. Subsequent to the production of those documents, Defendants will identify the Bates numbers which correspond to this response.

**INTERROGATORY NO. 3**

Identify and describe any and all facts or evidence that show the government interests identified in response to Interrogatory No. 1 could still be advanced if border officers 1) were

3

prevents," and accordingly it is unclear what information is sought by this interrogatory. Defendants further object insofar as this interrogatory suggests that Defendants are not permitted to detain or seize "digital contraband" unless they can guarantee that such items are not available on the Internet from other sources.  Subject to these objections, Defendants respond as follows:

Any digital contraband found by Defendants during a border search is appropriately safeguarded pursuant to policies governing border searches, applicable system of records notices and/or chain of custody requirements for evidence preservation.  Like any contraband discovered during a border search, the relevant law enforcement agency will retain and/or destroy the contraband as necessary, consistent with applicable laws and policies.  Accordingly, by definition, the specific digital contraband discovered during a border search cannot be illicitly transmitted over the internet by a private individual once it has been retained and/or destroyed.

**INTERROGATORY NO. 5**

Identify and describe any and all facts or evidence that show that digital contraband enters or becomes available in the United States via the Internet or Internet-based communication or other forms of communication.

Defendants' Response:  Defendants object to this interrogatory as vague and overly broad, to the extent it seeks  "all facts or evidence" and further because it is unclear what is meant by digital contraband "entering" or "becom[ing] available" in the United States via the Internet.  Defendants further object to this interrogatory as seeking facts outside of the defendant agencies' knowledge and such facts do not appear to be relevant to the claims and defenses in this case.  Defendants further object to this interrogatory because the burden of providing such information is not proportional to the needs of the case.  Read literally, this interrogatory would require production of evidence vastly disproportionate to the needs of this case, in violation of Fed. R. Civ. P. 26(b)(1).

---

Defendants generally use the term 'digital contraband' to refer to electronic information that it is unlawful to possess, to transport, to import into the United States, or to export from the United States.

5

Defendants further object insofar as this interrogatory suggests that Defendants are not permitted to detain or seize "digital contraband" unless they can guarantee that such items are not available on the Internet or from other sources. Subject to these objections, Defendants state as follows:

Defendants are aware that digital contraband may in certain circumstances be accessible from the United States via the internet.

### INTERROGATORY NO. 6

For each of the fiscal years since FY 2012, provide 1) the number of device confiscations by U.S. Customs and Border Protection ("CBP"), 2) the number of basic searches of devices by CBP, 3) the number of advanced searches of devices by CBP, 4) the number of device confiscations by U.S. Immigration and Customs Enforcement.

Defendants' Response: Defendants object to this interrogatory's use of the terms "basic searches" and "advanced searches" to cover information that predates the establishment of definitions for those terms in CBP's January 2018 Directive. In addition, the term "confiscations" is undefined and has no commonly accepted meaning in this context. Prior to CBP's January 2018 Directive, Defendant CBP did not, as a matter of policy, categorize searches of electronic devices as "basic" or "advanced." Subject to these objections, Defendants respond as follows:

Based on available data from CBP records, CBP estimates that it detained the following number of electronic devices after a traveler departed the port of entry or other location of inspection, in each of the identified fiscal years:

- FY 2012 – 8
- FY 2013 – 36
- FY 2014 – 32
- FY 2015 – 21
- FY 2016 – 131

- FY 2017 – 200
- FY 2018 (through 9/15/2018) – 172

Based on available data from CBP records, CBP estimates that it conducted basic searches of electronic devices in the following number of incidents, in each of the identified fiscal years:

- FY 2012 – 3,182
- FY 2013 – 3,561
- FY 2014 – 4,314
- FY 2015 – 6,618
- FY 2016 – 16,914
- FY 2017 – 27,701
- FY 2018 (through 9/15/2018) – 28,429

Based on available data from CBP records, CBP estimates that it conducted advanced searches of electronic devices in the following number of incidents, in each of the identified fiscal years:

- FY 2012 – 2,285
- FY 2013 – 2,444
- FY 2014 – 1,921
- FY 2015 – 2,090
- FY 2016 – 2,394
- FY 2017 – 2,685
- FY 2018 (through 9/15/2018) – 3,485

ICE does not maintain statistics on "device confiscations," but only the number of searches, each of which may involve more than one device, and may not amount to a "confiscation" in any

event.

**INTERROGATORY NO. 7**

Identify and describe all the types of information about a traveler that a border officer may see or have access to at a port of entry, including at primary and secondary inspection, and including whether or not the traveler has previously been subject to a device search or confiscation.

Defendants' Response: Defendants object to this interrogatory as vague, overly broad, and disproportionate to the needs of the case to the extent it seeks "all" types of information and fails to define "types" of information or "have access to", and further objects to the term "confiscation" as that is not a term used by defendant agencies.  In addition, the term "border officer" is not a term used by defendant agencies; therefore Defendants interpret the term to refer to an official employed by Defendants that conducts border searches of electronic devices pursuant to the Defendants' applicable policies.  *See* CBP Directive 3340-049A and ICE Directive 10044.  Defendants further object to this Request to the extent it seeks information protected by the law enforcement privilege.  Subject to these objections, Defendants state as follows:

The type of information about a traveler that is available to the inspecting CBP officer may vary depending on the location and environment in which CBP encounters the traveler.  For example, in the air and sea environment, CBP generally obtains certain information about individuals traveling to the U.S. on commercial or private aircraft, as well as commercial vessels, through CBP's Advance Passenger Information System (APIS).  Unlike in the air/sea travel environment, CBP does not generally receive advance travel information regarding individuals traveling to the U.S. by foot (pedestrian) or by private vehicle prior to their arrival at a port of entry.

Upon arrival in the United States, individuals are generally required to present themselves to CBP at the port of entry's primary arrival location (known as primary).  At primary, the CBP

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GHASSAN ALASAAD, NADIA ALASAAD, SUHAIB ALLABABIDI, SIDD BIKKANNAVAR, JÉRÉMIE DUPIN, AARON GACH, ISMAIL ABDEL-RASOUL AKA ISMA'IL KUSHKUSH, DIANE MAYE, ZAINAB MERCHANT, MOHAMMED AKRAM SHIBLY, AND MATTHEW WRIGHT, )))))))))) | |
| ) | Civil Action No. 17-cv-11730-DJC |
| Plaintiffs, ) ) | Hon. Denise J. Casper |
| v. )) | |
| KIRSTJEN NIELSEN, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY; KEVIN MCALEENAN, COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, IN HIS OFFICIAL CAPACITY; AND RONALD VITIELLO, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, IN HIS OFFICIAL CAPACITY, )))))))))))))) | |
| Defendants. ) | |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO
## PLAINTIFFS' SECOND SET OF DISCOVERY

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Defendants, by and through undersigned counsel submit their Objections and Responses to Plaintiffs' Second Set of Discovery.

**INTERROGATORY NO. 10**

Identify and describe any and all information or data retained by Defendants from the searches and confiscations of each of the Plaintiffs' electronic devices, including electronic data copied from Plaintiffs' electronic devices (such as copying by means of conducting an advanced search), and narrative descriptions of information or data observed or found during a search of Plaintiffs' electronic devices.

<u>Defendants' Response</u>:

Defendants object to this interrogatory as vague, overly broad and improper because it asks for "any and all information" and further because the term "confiscations" is undefined and has no commonly accepted meaning in this context. Defendants further object to this interrogatory insofar as it characterizes officer impressions and observations as constituting the retention of data from searches or detentions of Plaintiffs' electronic devices. Defendants further object to this interrogatory to the extent it seeks information protected by the law enforcement privilege, the deliberative process privilege, or other applicable privileges or protections from disclosures. Subject to the foregoing objections, Defendants respond as follows:

Pursuant to Fed. R. Civ. P. 33(d), with regard to narrative descriptions of information or data observed or found during a search of Plaintiffs' electronic devices, Defendants refer Plaintiffs to the following documents produced in discovery: Defs. 0098, 0102, 0105, 0106, 0340, 0351, 0355, 0359, 0691, 0711, 0849, 0873, and 0878.

In addition, certain records produced by Defendants in discovery contain redacted information reflecting narrative descriptions of information or data observed or found during a search of the electronic devices of the following Plaintiffs:

- Nadia Alasaad
- Siddarayappa Bikkanavar
- Jeremie Dupin
- Diane Maye
- Zainab Merchant

Additional information regarding whether and to what extent Defendants included information or data copied from or regarding a specific electronic device in their law enforcement records and systems would reveal information protected from disclosure under the law enforcement privilege.

**INTERROGATORY NO. 11**

Identify and describe the manner in which Defendants calculate the number of border searches of electronic devices conducted in each fiscal year, including whether the number is calculated by relying on particular types of records or reports, such as Electronic Media Reports, in CBP or ICE databases, and whether the number is calculated by using any records or reports not contained in CBP or ICE databases.

Defendants' Response:

Defendants object to this interrogatory's use of the term "in each fiscal year" as vague and ambiguous insofar as it fails to identify the fiscal year(s) at issue. Subject to the foregoing objection, Defendants respond as follows:

ICE calculates the number of searches of electronic devices conducted by ICE from the information entered into the Computer Forensics Program's Field Exam Report (FER) system by the Computer Forensics Agent or Analyst conducting the search. CBP Officers are required by policy to complete an Electronic Media Report (EMR) for each border search of an electronic device. To generate the number of border searches of electronic devices in a given time period, CBP calculates the number of closed or completed EMRs that relate to searches that were initiated during the time period at issue.

**DOCUMENT REQUEST 17**

Documents reflecting the August 28, 2017 search of the phone being used by Ms. Alasaad's daughter (Lamees Alasaad).

Defendants' Response: Defendants object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work-product doctrine. Subject to the foregoing objections, Defendants respond as follows:

Based on Defendants' search, to the best of their knowledge, there are no responsive documents.

**DOCUMENT REQUEST 18**

Documents reflecting alleged searches of Plaintiff Kushkush's electronic devices on January 9, 2016, January 10, 2016, or January 4, 2017.

Defendants' Response: Subject to Defendants' Objections and Responses to Requests 11 and 12 in Plaintiffs' First Set of Requests for Production to All Defendants, Defendants respond as follows:

Defendants have produced all responsive documents pertaining to Plaintiff Kushkush and have no additional documents to produce. Based on Defendants' search, to the best of their knowledge, there are no documents reflecting alleged searches of Plaintiff Kushkush's electronic devices on January 9, 2016, January 10, 2016, or January 4, 2017.

**DOCUMENT REQUEST 19**

Any additional documents used to support the statements in paragraphs 107-113 of Defendants' Answer.

Defendants' Response: Defendants object to this Request to the extent it seeks information protected from disclosure by the law enforcement privilege, attorney-client privilege, and/or the work-product doctrine. Defendants further object to this Request's use of the term "used to support," which is vague and arguably calls for information that is presumptively not subject to

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ghassan Alasaad, Nadia Alasaad, Suhaib Allababidi, Sidd Bikkannavar, Jérémie Dupin, Aaron Gach, Ismail Abdel-Rasoul aka Isma'il Kushkush, Diane Maye, Zainab Merchant, Mohammed Akram Shibly, and Matthew Wright, <br><br>    Plaintiffs, <br><br>v. <br><br>Kirstjen Nielsen, Secretary of the U.S. Department of Homeland Security, in her official capacity; Kevin McAleenan, Commissioner of U.S. Customs and Border Protection, in his official capacity; and Ronald Vitiello, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity, <br><br>    Defendants. | Civil Action No. 17-cv-11730-DJC <br><br> Hon. Denise J. Casper |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION AND PLAINTIFFS' THIRD SET OF INTERROGATORIES

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Defendants, by and through undersigned counsel submit their Objections and Responses to Plaintiffs' Second Set of Requests for Production and Third Set of Interrogatories.

**DOCUMENT REQUEST NO. 20**

All documents, including but not limited to policy and training documents, related to the procedures for obtaining a judicial warrant as outlined in Customs and Border Protection's Personal Search Handbook.[1] *See, e.g.*, pp. 10, 29, 35, and 36

---

[1] https://www.regulations.gov/document?D=ICEB-2012-0003-000

### DOCUMENT REQUEST NO. 23

All documents, including but not limited to policy and training documents, related to Defendants' compliance, during border searches or seizures of electronic devices, with *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013), *Riley v. California*, 134 S. Ct. 2473 (2014), or *United States v. Kolsuz*, 890 F.3d 133 (4th Cir. 2018).

### RESPONSE:

Defendants object to this Request to the extent it seeks information protected from disclosure by the law enforcement privilege, attorney-client privilege, the work-product doctrine, and/or the deliberative process privilege. Defendants further object to the Request for "all documents . . . related to the procedures for obtaining a judicial warrant[,]" as vague, ambiguous, overly broad and unduly burdensome insofar as it purports to request every document which has any connection to Defendants' compliance with certain court decisions.

Subject to the foregoing objections, in response to this Request, CBP hereby refers Plaintiffs to documents previously produced in discovery: Defs. 0129-132. ICE refers Plaintiffs to documents previously produced in discovery: Defs. 0063-0091 and ICE also produces Bates pages 1266-1267 in response to this Request.

### INTERROGATORY NO. 12

For Defendants' produced document Bates 909 regarding Plaintiff Matthew Wright, please explain what "To: EMC" and "Taken: CM" mean.

CBP's Response: In the produced document Bates 909, "To: EMC" refers to the individual to whom the incoming package was addressed. "Taken: CM" refers to the analyst to whom the incoming package was assigned.

### INTERROGATORY NO. 13

Of the total number of electronic devices searched by Defendants during Fiscal Years 2012-2018 (per the statistics provided in Stipulations Nos. 13 and 15) pursuant to Defendants' electronic device search policies (CBP Directive Nos. 3340-049 and 3340-049A; ICE Directive No. 7-6.1/ICE Policy 10044.1), provide the number of devices that contained digital contraband for each fiscal year.

4

Defendants' Response: Defendants object to this interrogatory as vague due to its use of the undefined term "digital contraband," and accordingly it is unclear what information is sought by this interrogatory. Defendants also object to this interrogatory as overly broad and unduly burdensome to the extent it seeks to require Defendants to develop a definition of "digital contraband,"[2] to create mechanisms for compiling information relating thereto, and/or to create new statistics.

Subject to the foregoing objections, Defendants state that neither CBP's nor ICE's recordkeeping systems track or capture any such metrics and therefore they are unable to provide aggregate statistics reflecting the number of devices containing digital contraband.

**INTERROGATORY NO. 14**

Other than CBP Directive No. 3340-049A Secs. 5.4 and 5.5, and ICE Directive No. 7-6.1 Sec. 8.5, identify and explain the polices, practices, and training that are applicable to the recording and retention of information viewed, searched, or copied during searches of electronic devices seized or obtained from travelers at the border.

Defendant's Response: Defendants object to this interrogatory to the extent it seeks information protected by the law enforcement privilege. Defendants further object to this interrogatory as vague and overly broad to the extent it seeks information relating to policies, practices, and training regarding the processing, handling, and analysis of evidence and merchandise that applies generally, and not specifically to border searches of electronic devices.

Subject to the foregoing objections, Defendants respond as follows:

Pursuant to Fed. R. Civ. P. 33(d), CBP refers Plaintiffs to the following documents previously produced in discovery: Defs. 0113-24, 0125-26, 0127-28, 0133-61, 0162, 0174-218. In addition, CBP refers Plaintiffs to the Privacy Impact Assessment being produced in response to Plaintiffs' Second Set of Requests for Production at Bates Number Defs. 996-1056. The Privacy Impact Assessment addresses policies and practices applicable to the recording and retention of information viewed, searched, or copied during searches of electronic devices seized or obtained

---

[2] Although not defined by Plaintiffs, and subject to the objections noted above, in this answer Defendants generally use the term 'digital contraband' to refer to electronic information that it is unlawful to possess, to transport, to import into the United States, or to export from the United States.

from travelers at the border.

Pursuant to Pursuant to Fed. R. Civ. P. 33(d), ICE refers Plaintiffs to the documents previously produced discovery: Defs. 0034-0062, and Defs. 0916-0944, and is also producing Bates pages 1184-1224, 1240-1263, and 1264-1265 in response to this Request

In addition, to the extent information viewed, searched, or copied during searches of electronic devices is maintained in a system of records that is subject to the Privacy Act, the applicable System of Records Notice (SORN) sets forth additional policies and requirements related to the retention of such information. Defendants' SORNs are accessible at: https://www.dhs.gov/system-records-notices-sorns.

**INTERROGATORY NO. 15**

Other than CBP Directive No. 3340-049A Secs. 5.4 and 5.5, and ICE Directive No. 7-6.1 Sec. 8.3, identify and explain the polices, practices, and training that are applicable to the length of time that electronic devices seized or obtained from travelers at the border remain in CBP or ICE custody, in particular, how and why extensions of time are granted.

Defendant's Response: Defendants object to this interrogatory to the extent it seeks information protected by the law enforcement privilege.

Subject to the foregoing objection, Defendants respond as follows:

Pursuant to Fed. R. Civ. P. 33(d), CBP refers Plaintiffs to the following documents previously produced in discovery: Defs 0113-24, and 0174-218.  In addition to CBP Directive No. 3340-0489A Secs. 5.4 and 5.5, the Privacy Impact Assessment addresses policies and practices applicable to the recording and retention of information viewed, searched, or copied during searches of electronic devices seized or obtained from travelers at the border.

Pursuant to Pursuant to Fed. R. Civ. P. 33(d), ICE refers Plaintiffs to documents previously produced in discovery: Defs. 0034-0062, 0063-0091, 0916-0944 and also produces Bates pages 1184-1224 in response to this Request.

**INTERROGATORY NO. 16**

Explain whether ICE (including, but not limited to, Homeland Security Investigations) makes decisions independent of CBP to conduct basic/manual or forensic/advanced searches of electronic devices seized or obtained at the border; and if so, how ICE officers decide to do so,

6

including what information about travelers is available to ICE officers.

ICE's Response:  ICE objects to this Interrogatory as overly broad to the extent that it seeks agency-wide information and is not limited to Homeland Security Investigation, which is the office primarily responsible for investigating crimes at the border.  ICE further objects to this Interrogatory to the extent it seeks law enforcement sensitive information.

Subject to the foregoing objections, ICE states that ICE Special Agents make independent decisions on whether and how they will conduct a border search of an electronic device, including whether they will perform a basic/manual and/or advanced/forensic search of that device.  Prior to making such a decision, ICE Special Agents have access to numerous law enforcement systems that may contain information about a traveler that would inform a decision to conduct a border search, including any investigative information that ICE may have already developed concerning that traveler.  An ICE Special Agent's decision whether and how to conduct any border search of an electronic device will be based upon the potential for that search to further a particular investigation into a suspected crime within the jurisdiction of ICE and will be guided by the policies and practices of ICE with regard border searches of electronic devices.

**INTERROGATORY NO. 17**

Explain whether and under what circumstances border officers employed by Defendants search or confiscate travelers' electronic devices at the request of any other federal, state, or local government department, agency, or entity. (Note that this interrogatory is not in reference to CBP Directive No. 3340-049A Secs. 5.4.2.1 or 5.5.2.2, or ICE Directive No. 7-6.1 Sec. 8.4, related to situations where CBP/ICE request technical or subject-matter assistance from other agencies or entities.)

Defendant's Response: Defendants object to this Interrogatory as vague and overly broad. Defendants object to the term "border officer" because it is not a term used by defendant agencies; therefore Defendants interpret the term to refer to an official employed by Defendants that conducts border searches of electronic devices pursuant to the Defendants' applicable policies.  *See* CBP Directive 3340-049A and ICE Directive 10044.  Defendants further object to

7

this Interrogatory because the term "confiscations" is undefined and has no commonly accepted meaning in this context. Defendants also object to this interrogatory to the extent it seeks information protected by the law enforcement privilege.

Subject to the foregoing objections Defendants respond as follows:

CBP conducts border searches of electronic devices in furtherance of CBP's customs, immigration, law enforcement, and homeland security responsibilities and to ensure compliance with customs, immigration, and other laws that CBP is authorized to enforce and administer. While CBP decisions to perform border searches of electronic devices benefit from information provided by other law enforcement agencies, the decision for CBP to conduct a border search of an electronic device rests exclusively with CBP and is conducted in accordance with applicable law and policy. A CBP Officer may conduct a basic search, as defined in CBP Directive No. 3340-049A Sec. 5.1.3, with or without suspicion. With appropriate supervisory approval, a CBP Officer may conduct an advanced search, as defined in CBP Directive No. 3340-049A, in instances in which there is reasonable suspicion of activity in violation of the laws enforced and administered by CBP, or in which there is a national security concern.

ICE states that ICE Special Agents make independent determinations on the jurisdiction, justification, and necessity for every border search they undertake. While information provided to ICE by other law enforcement agencies may inform an ICE Special Agent's decision to perform a border search of an electronic device, ICE conducts border searches to further ICE investigations and pursue ICE's law enforcement mission and does not conduct border searches or detain electronic devices at the request of any other agency.