# EXHIBIT 27

LAW ENFORCEMENT SENSITIVE

OFFICE OF INSPECTOR GENERAL

# CBP's Searches of Electronic Devices at Ports of Entry - Redacted

**LAW ENFORCEMENT SENSITIVE WARNING:** The information in this document marked LES is the property of the Department of Homeland Security and may be distributed within the Federal Government (and its contractors) to law enforcement, public safety and protection, and intelligence officials and individuals with a need to know. Distribution to other entities without prior Department of Homeland Security authorization is prohibited. Precautions shall be taken to ensure this information is stored and destroyed in a manner that precludes unauthorized access. Information bearing the LES marking may not be used in legal proceedings without prior authorization from the originator. Recipients are prohibited from posting information marked LES on a website or unclassified network.

LAW ENFORCEMENT SENSITIVE


Homeland Security

December 3, 2018
OIG-19-10

Defs. 0972



~~LAW ENFORCEMENT SENSITIVE~~

# DHS OIG HIGHLIGHTS
*CBP's Searches of Electronic Devices At Ports of Entry*

**December 3, 2018**

## Why We Did This Audit

The *Trade Facilitation and Trade Enforcement Act of 2015* (TFTEA) requires U.S. Customs and Border Protection (CBP) to establish standard operating procedures (SOP) for searching, reviewing, retaining, and sharing information in communication, electronic, or digital devices at U.S. ports of entry. The TFTEA also requires the DHS Office of Inspector General to conduct three annual audits to determine to what extent CBP conducted searches of electronic devices in accordance with the SOPs.

## What We Recommend

We made five recommendations to improve CBP's oversight of searches of electronic devices at ports of entry.

**For Further Information:**
Contact our Office of Public Affairs at (202) 981-6000, or email us at
DHS-OIG.OfficePublicAffairs@oig.dhs.gov

## What We Found

Between April 2016 and July 2017, CBP's Office of Field Operations (OFO) did not always conduct searches of electronic devices at U.S. ports of entry according to its SOPs. Specifically, because of inadequate supervision to ensure OFO officers properly documented searches, OFO cannot maintain accurate quantitative data or identify and address performance problems related to these searches. In addition, OFO officers did not consistently disconnect electronic devices, specifically cell phones, from the network before searching them because headquarters provided inconsistent guidance to the ports of entry on disabling data connections on electronic devices.

OFO also did not adequately manage technology to effectively support search operations and ensure the security of data. Finally, OFO has not yet developed performance measures to evaluate the effectiveness of a pilot program, begun in 2007, to conduct advanced searches, including copying electronic data from searched devices to law enforcement databases.

These deficiencies in supervision, guidance, and equipment management, combined with a lack of performance measures, limit OFO's ability to detect and deter illegal activities related to terrorism; national security; human, drug, and bulk cash smuggling; and child pornography.

## CBP's Response

CBP concurred with our recommendations. We have included a copy of CBP's response to our draft report at appendix A.



**LAW ENFORCEMENT SENSITIVE**

## OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

December 3, 2018

MEMORANDUM FOR:   Todd Owen
                  Executive Assistant Commissioner
                  Office of Field Operations
                  U.S. Customs and Border Protection

FROM:             Sondra F. McCauley
                  Assistant Inspector General for Audits

SUBJECT:          *CBP's Searches of Electronic Devices at Ports of Entry*

Attached for your action is our final report, *CBP's Searches of Electronic Devices at Ports of Entry.* We incorporated the formal comments provided by your office.

The report contains five recommendations aimed at improving the overall effectiveness of CBP's oversight of searches of electronic devices at ports of entry. Your office concurred with all five recommendations. Based on information provided in your response to the draft report, we consider the five recommendations resolved and open. Once your office has fully implemented the recommendations, please submit a formal closeout letter to us within 30 days so that we may close the recommendations. The memorandum should be accompanied by evidence showing completion of the agreed-upon corrective actions. Please send your response or closure request to OIGAuditsFollowup@oig.dhs.gov.

Consistent with our responsibility under the *Inspector General Act*, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over the Department of Homeland Security. We will post a redacted version of the report on our website.

Please call me with any questions, or your staff may contact Donald Bumgardner, Deputy Assistant Inspector General for Audits, at (202) 981-6000.

**LAW ENFORCEMENT SENSITIVE**



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Background

U.S. Customs and Border Protection (CBP) exercises law enforcement authority when securing the Nation's borders and 328 ports of entry. Electronic devices, such as computers, thumb drives, and mobile phones, are subject to search at U.S. ports of entry to ensure the enforcement of immigration, customs, and other Federal laws.

CBP processed more than 787 million travelers upon arrival at U.S. ports of entry in fiscal years 2016 and 2017, and searched approximately 47,400 electronic devices. In fiscal year 2016, CBP processed more than 390 million travelers arriving at U.S. ports of entry and searched the electronic devices of an estimated 18,400 of those inbound travelers (.005 percent). In FY 2017, CBP processed more than 397 million travelers and searched the electronic devices belonging to more than 29,000 of those inbound travelers (.007 percent).

CBP's Office of Field Operations (OFO) is responsible for determining the admissibility of travelers at U.S. ports of entry. OFO officers conduct primary inspections of all travelers arriving at ports of entry. During a primary inspection, OFO officers review travelers' passports and other documents to decide whether to admit travelers to the United States or refer them for secondary inspection.

During secondary inspection, an OFO officer may search a traveler's electronic device to determine admissibility and identify any violation of laws. For instance, in March 2018, during a search of a traveler's electronic device, officers found images and videos of terrorist-related materials. In another incident, officers found graphic and violent videos, including child pornography. CBP denied both travelers entry into the United States.

A secondary inspection may involve a basic (manual) search, an advanced search, or both. The officer can make a referral for a manual search because of inconsistencies in response, behavioral analysis, or intelligence analysis. A manual search involves the OFO officer manually reviewing the information on a traveler's electronic device.

An advanced search, which OFO started as a pilot program in 2007, involves a specially trained officer connecting external equipment to the traveler's device to copy information. The officer uploads the copied information to CBP's Automated Targeting System (ATS) to be further analyzed against existing ATS information. CBP personnel provide real-time feedback to the OFO officer of any identified derogatory information.



~~**LAW ENFORCEMENT SENSITIVE**~~
**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Results of Audit

During our review of a sample of border searches of electronic devices conducted between April 2016 and July 2017, we determined that OFO did not always conduct the searches at U.S. ports of entry according to its SOPs. Specifically, because of inadequate supervision to ensure OFO officers properly documented searches, OFO cannot maintain accurate quantitative data or identify and address performance problems related to these searches. In addition, OFO officers did not consistently disconnect electronic devices, specifically cell phones, from networks before searching them because headquarters provided inconsistent guidance to the ports of entry on disabling data connections on electronic devices. OFO also did not adequately manage technology to effectively support search operations and ensure the security of data. Finally, OFO has not yet developed performance measures to evaluate the effectiveness of a pilot program, begun in 2007, to conduct advanced searches, including copying electronic data from searched devices to law enforcement databases.

These deficiencies in supervision, guidance, and equipment management, combined with a lack of performance measures, limit OFO's ability to detect and deter illegal activities related to terrorism; national security; human, drug, and bulk cash smuggling; and child pornography.

**Searches of Electronic Devices Not Always Properly Documented**

OFO officers did not always properly document actions and complete the required chain of custody forms when conducting searches of electronic devices. This occurred because supervisors did not always adequately review documentation to ensure officers properly documented searches at the ports of entry.

CBP Directive 3340-049, *Border Search of Electronic Devices Containing Information*, dated August 20, 2009, was in effect at the time of our review. According to the directive, CBP officers are responsible for completing all applicable documentation in the appropriate CBP systems of record when conducting electronic searches. Reports are to be created and updated in an accurate, thorough, and timely manner. Reports must include all information related to the search through the final disposition, including supervisory approvals and extensions when appropriate. In addition, the duty supervisor is to ensure the officer completes a thorough inspection and that all notification, documentation, and reporting requirements are accomplished.



We reviewed 194 EMRs and identified 130 (67 percent) that featured one or more problems, which totaled 147 overall. See table 1.

**Table 1: Problems Identified in CBP Electronic Media Reports**

| Insufficient or Inaccurate Information | Number of EMRs |
|---|---|
| Vague narrative describing border search | 62 |
| Inaccurate notes or action details | 31 |
| No witnessing supervisor documented | 29 |
| **Detention and Seizure Chain of Custody Forms** | |
| Missing information on Forms 6051D & 6051S | 7 |
| **Late Supervisory Review** | |
| Review more than 7 days from incident | 18 |

Source: OIG analysis of EMRs from CBP

Without accurate and complete documentation of border searches of electronic devices, OFO cannot maintain reliable quantitative data, identify and address performance problems, and minimize the risk of electronic devices becoming lost or misplaced.

**Data Connections Not Consistently Disabled Prior to Searching Electronic Devices**

A border search of an electronic device conducted by an OFO officer should include an examination of only the information that is physically on the device, not information stored on a remote server. To avoid retrieving or accessing information stored remotely, officers should either request that the traveler disable connectivity to any network (e.g., by placing the device in airplane mode) or, in instances warranted by national security, law enforcement, officer safety, or other operational considerations, officers will disable network connectivity. However, OFO officers did not consistently disconnect electronic devices, specifically cell phones, from the network before searching them. This occurred because headquarters provided inconsistent guidance to the ports of entry on disabling electronic devices' data connections.

Specifically, in April 2017, OFO issued a memo[7] that claimed to reaffirm its existing policy and protocol for disconnecting electronic devices from internet access (i.e., disabling network connections) before a search.[8] Unless each device's network connection is disabled, OFO could potentially retrieve information from external sources, leaving the results of the border search questionable. However, Directive 3340-049, the policy at the time, did not require disabling data connections prior to conducting a search. Of the 194 EMRs we reviewed, 154 were completed prior to the issuance of the April 2017

---

[7] *Border Search of Electronic Devices Containing Information*, dated April 13, 2017.
[8] Disabling data connections ensures that electronic devices are limited to the data on them.

Defs. 0979



memo. None of the 154 contained evidence that data connections were disabled on electronic devices searched.

In addition, the April 2017 memo required OFO officers to document in the EMR whether cellular and data connections were disabled prior to conducting a search and further required supervisors to confirm connections were disabled in a statement in the EMR before approving it. Despite these requirements, OFO supervisors did not provide adequate oversight to ensure officers disabled data connections on electronic devices prior to searching them, nor did the supervisors properly review EMRs. We reviewed 40 EMRs completed after the issuance of the April 2017 memo. Even though OFO supervisors reviewed and approved EMRs, more than one-third of the EMRs (14 of 40) lacked a statement confirming that the electronic device's data connection had been disabled.

Since we began the audit, CBP has taken action to improve in this area. In October 2017, CBP completed system enhancements to their EMRs in TECS. Those enhancements include a mandatory data field to allow officers to select, rather than compose, a statement to confirm disabling a device data connection. Additionally, on January 4, 2018, CBP issued Directive 3340-049A, *Border Search of Electronic Devices,* which supersedes Directive 3340-049. Unlike the superseded directive, the newly issued directive expressly states, "Officers will either request that the traveler disable connectivity to any network (e.g., by placing the device in airplane mode); or, where warranted by national security, law enforcement, officer safety, or other operational considerations, officers will themselves disable network connectivity."

**External Equipment and Data for Border Searches Not Well Managed**

According to the Government Accountability Office's (GAO) *Standards for Internal Control in the Federal Government,* Sections 10.03 and 12.01, management is responsible for establishing physical control to secure and safeguard vulnerable assets and implement control activities through policies. However, OFO is not managing the external equipment used to conduct advanced border searches of electronic devices well. Specifically, OFO did not renew software licensing agreements for external equipment expeditiously and maintained information copied on thumb drives that should have been deleted.

Defs. 0980



~~LAW ENFORCEMENT SENSITIVE~~
**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

### OFO Did Not Renew Software Licensing of External Equipment Expeditiously

OFO purchased the ▮▮▮▮▮ tool, which is a computer triage tool that enables examination of laptop hard drives, USB[9] drives, and multimedia cards, to prohibit importation of illegal materials. The ▮▮ tool requires an annual license renewal that encompasses a warranty, support, maintenance, and software upgrades to maximize security effectiveness. We reviewed software licensing agreements of the ▮▮ tool from 2016 and 2017 and found a licensing lapse. Because OFO headquarters did not renew the software licensing of the ▮▮ tool expeditiously, licensing agreements were only in effect from January 20, 2016, through January 31, 2017; and from September 13, 2017, through September 12, 2018.

> Software licensing agreements were **not** in effect from February 1, 2017, through September 12, 2017.

According to an OFO official, there is no dedicated funding for external equipment such as the ▮▮ tool because it is part of the advanced searches of electronic devices pilot program. According to the same official, due to the lack of dedicated funding and the combination of budgetary issues and other funding priorities, the initial vendor estimate he received for the purchase expired. Therefore, he had to obtain another vendor estimate, which caused a delay in promptly submitting the license renewal documentation.

Without a valid software license, OFO officers could not conduct advanced searches of laptop hard drives, USB drives, and multimedia cards at the ports of entry. This deficiency limited OFO's ability to obtain evidence of criminal activity and to detect and deter illegal activities, such as child pornography. Additionally, it hinders OFO's ability to mitigate the risk of criminals entering the United States with unexamined national security or law enforcement-related information on their laptops.

### OFO Does Not Always Delete Travelers' Information Copied during Advanced Searches

During advanced searches, OFO officers connect external equipment to electronic devices and copy information onto a thumb drive; the copied information is uploaded via the thumb drive to the CBP's ATS for further analysis. According to two OFO training officials, once an OFO officer completes an ATS upload, he or she should immediately delete all copied information from the thumb drive, but OFO could not provide written policy or procedures related to the training officials' oral requirement.

---

[9] Universal Serial Bus is a common interface that enables communication between devices and a host controller such as a personal computer.



**LAW ENFORCEMENT SENSITIVE**
**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

We physically inspected thumb drives at five ports of entry. At three of the five ports, we found thumb drives that contained information copied from past advanced searches, meaning the information had not been deleted after the searches were completed. Based on our physical inspection, as well as the lack of a written policy, it appears OFO has not universally implemented the requirement to delete copied information, increasing the risk of unauthorized disclosure of travelers' data should thumb drives be lost or stolen.

**OFO Has Not Developed Performance Measures for the Advanced Searches of Electronic Devices Pilot Program**

According to GAO's *Standards for Internal Control in the Federal Government,* management should establish activities to monitor performance measures and indicators. These may include comparisons and assessments relating different sets of data to one another so that analyses of the relationships can be made and appropriate actions taken.

OFO has not developed performance measures to assess the effectiveness of its advanced searches of electronic devices pilot program. In 2007, four ports of entry used external equipment for OFO's advanced searches of electronic devices pilot program; OFO has now expanded the pilot to 67 ports of entry. Although OFO maintains quantitative data on the number and location of advanced searches, it has not developed performance measures. One area to measure is the number of instances in which information collected from searches resulted in a prosecution or conviction, but according to OFO, it does not track this information.

Without performance measures, OFO cannot evaluate the effectiveness of the pilot program. OFO will not be able to determine whether the advanced searches are achieving their intended purpose or whether the use of advanced searches should be expanded to other ports of entry.

## Conclusion

In FY 2017, CBP searched electronic devices belonging to more than 29,000 inbound travelers. Given the number of searches, it is important that OFO ensure the searches are properly documented and that OFO officers conducting the searches are adequately overseen. Properly managing the equipment used to conduct advanced searches is also critical to make certain officers are not limited in their ability to detect and deter illegal activities. As the world of information technology evolves, techniques used by OFO must also evolve to identify, investigate, and prosecute individuals who use new technologies to commit crimes. Finally, to demonstrate OFO is meeting its security mission, developing performance measures will be essential to assess the effectiveness of OFO's pilot program of advanced searches, which has been

Defs. 0982