IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GHASSAN ALASAAD, NADIA ALASAAD, SUHAIB ALLABABIDI, SIDD BIKKANNAVAR, JÉRÉMIE DUPIN, AARON GACH, ISMAIL ABDEL-RASOUL AKA ISMA'IL KUSHKUSH, DIANE ZORRI, ZAINAB MERCHANT, MOHAMMED AKRAM SHIBLY, AND MATTHEW WRIGHT,<br><br>    Plaintiffs,<br><br>    v.<br><br>KEVIN K. MCALEENAN, ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, IN HIS OFFICIAL CAPACITY; JOHN P. SANDERS, CHIEF OPERATING OFFICER AND SENIOR OFFICIAL PERFORMING THE FUNCTIONS AND DUTIES OF THE COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, IN HIS OFFICIAL CAPACITY; AND MARK A. MORGAN, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, IN HIS OFFICIAL CAPACITY,<br><br>    Defendants. | Civil Action No. 17-cv-11730-DJC<br><br>Hon. Denise J. Casper |

**REPLY IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. Border Search Law Forecloses Plaintiffs' Claims ............................................................... 1

II. Plaintiffs' Facial Challenge is Overbroad ........................................................................... 2

III. The Balance of Interests at the International Border Bar Plaintiffs' Claim ........................ 4

    A. The Government's Compelling Interests are Advanced by Device Searches ............................................................................................................... 4

    B. A Warrant Requirement Would Threaten National Security ................................ 6

    C. The Privacy Interest of Travelers is Significantly Diminished at the Border ......... 7

    D. Plaintiffs Cannot Show that a Lesser Standard is Required .................................. 9

IV. Probable Cause is Not Required to Detain an Electronic Device Anytime a Traveler Leaves the Border ................................................................................................ 10

V. Plaintiffs Cannot Show a First Amendment Violation ..................................................... 12

VI. Plaintiffs Cannot Establish Standing ................................................................................. 13

    A. Plaintiffs Lack Standing to Seek Expungement ................................................... 13

    B. Plaintiffs Lack Standing Based on Likelihood of a Future Search ...................... 14

# TABLE OF AUTHORITIES

**CASES**

*Boyd v. United States*,
   116 U.S. 616 (1886) .................................................................................................... 5

*City of Los Angeles v. Patel*,
   135 S. Ct. 2443 (2015) ............................................................................................ 2, 3

*Doherty v. Merck & Co.*,
   892 F.3d 493 (1st Cir. 2018) ..................................................................................... 10

*Fox v. District of Columbia*,
   851 F. Supp. 2d 20 (D.D.C. 2012) ............................................................................ 14

*Herring v. United States*,
   555 U.S. 135 (2009), *rehearing denied*, 556 U.S. 1161 (2009) ............................... 14

*House v. Napolitano*,
   Civ. A. No. 11-10852-DJC, 2012 WL 1038816 (D. Mass. Mar. 28, 2012) ................ 7

*Isaacs v. Dartmouth Hitchcock Med. Ctr.*,
   No. 12-CV-40-JL, 2012 WL 2088821 (D.N.H. June 8, 2012) .................................. 10

*Jansfeshan v. CBP*,
   No. 16-cv-6915, 2017 WL 3972461 (E.D.N.Y. Aug. 21, 2017) ............................... 14

*Kerin v. Titeflex Corp.*,
   770 F.3d 978 (1st Cir. 2014) ..................................................................................... 15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 14

*Nat'l Ass'n of Soc. Workers v. Harwood*,
   69 F.3d 622 (1st Cir. 1995) ......................................................................................... 9

*Pa. Bd. of Prob. & Parole v. Scott*,
   524 U.S. 357 (1998) .................................................................................................. 13

*Paroline v. United States*,
   572 U.S. 434 (2014) .................................................................................................... 5

*Reporters Comm. for Freedom of the Press v. Am. Tel. & Tel. Co.*,
   593 F.2d 1030 (D.C. Cir. 1978) ................................................................................ 12

*Riley v. California*,
   573 U.S. 373 (2014) ............................................................................................ 1, 4, 8

*Rocafort v. IBM Corp.*,
   334 F.3d 115 (1st Cir. 2003) ....................................................................................... 9

*Town of Portsmouth, v. Lewis*,
   813 F.3d 54 (1st Cir. 2016) .................................................................................................. 10

*United States v. Barconey*,
   Crim. A. No. 2017-0011, 2019 WL 137579 n. 37 (D.V.I. Jan. 8, 2019) ................................... 6

*United States v. Blackwell*,
   Case No. 18-CR-0138 (PJS/LIB), 2018 WL 6804803 (D. Minn. Dec. 27, 2018) ..................... 6

*United States v. Braks*,
   842 F.2d 509 (1st Cir. 1988) .................................................................................................. 10

*United States v. Flores-Montano*,
   541 U.S. 149 (2004) ................................................................................................................. 8

*United States v. Ickes*,
   393 F.3d 501 (4th Cir. 2005) .................................................................................................. 13

*United States v. Kolsuz*,
   890 F.3d 133 (4th Cir. 2018) ................................................................................................ 6, 7

*United States v. Molina-Gomez*,
   781 F.3d 13 (1st Cir. 2015) ................................................................................................ 1, 10

*United States v. Molina-Isidoro*,
   884 F.3d 287 (5th Cir. 2018) ................................................................................................... 8

*United States v. Montoya de Hernandez*,
   473 U.S. 531 (1985) .................................................................................................. 6, 8, 9, 11

*United States v. Ramsey,*
   431 U.S. 606 (1977) ................................................................................................................. 1

*United States v. Saboonchi*,
   990 F. Supp. 2d 536 (D. Md. 2014), *denying reconsideration*,
   48 F. Supp. 3d 815 (D. Md. 2014) ........................................................................................... 2

*United States v. Scott*,
   No. CR-07-093-RHW, 2008 WL 11451918 (E.D. Wash. Mar. 12, 2008) .............................. 13

*United States v. Uricoechea-Casallas*,
   946 F.2d 162 (1st Cir. 1991) .................................................................................................... 1

*Warden v. Hayden*,
   387 U.S. 294 (1967) ................................................................................................................. 5

**OTHER AUTHORIES**

S. 1606, 116th Cong. ..................................................................................................................... 7

S. 2462, 115th Cong. ..................................................................................................................... 7

Binding Supreme Court and First Circuit precedent forecloses the unprecedented requirement Plaintiffs seek to impose on the executive branch at the border -- a requirement of probable cause and a warrant on *every* electronic device search in *every* case.  Plaintiffs' claims not only lack legal support but fail in any way to account for the very real and substantial interests served by the appropriate exercise of plenary search authority at the border, whether of devices or luggage.  The Court should enter summary judgment for the Government.

I.      **Border Search Law Forecloses Plaintiffs' Claims**

The Supreme Court has consistently held that compelling Government interests at the border—national security and territorial integrity—preclude a requirement of probable cause and a warrant to support a border search.  *See, e.g., United States v. Ramsey,* 431 U.S. 606, 617 (1977) ("This interpretation, that border searches were not subject to the warrant provisions of the Fourth Amendment . . . has been faithfully adhered to by this Court.").  The First Circuit has held that border searches generally require no suspicion, and only require reasonable suspicion for "non-routine" invasive personal searches.  *See, e.g., United States v. Molina-Gomez*, 781 F.3d 13, 19 (1st Cir. 2015); *United States v. Uricoechea-Casallas*, 946 F.2d 162, 166 (1st Cir. 1991).  Yet Plaintiffs ignore this precedent and seek to create a third category – device searches allowed only on the basis of probable cause and a warrant.  This Court should reject Plaintiffs' efforts to create a new rule for border searches, especially where the rule is at odds with existing caselaw and prior precedents.

Numerous decisions, including those before and after *Riley v. California*, 573 U.S. 373 (2014), have examined electronic device searches at the border and have uniformly rejected Plaintiffs' claims.  Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. & in Opp'n to Pls.' Mot. for Summ. J., at 13 n.6 (ECF No. 97) (collecting cases), as Plaintiffs themselves concede.  Pls.'

1

Opp'n to Defs.' Mot. for Summ. J. & Reply in Supp. of Pls.' Mot. for Summ. J. (ECF No. 99) (admitting that "courts have not previously required a warrant for border searches"). There is no legal basis to extend the requirements of probable cause and a warrant in the manner Plaintiffs seek, and this Court should enter judgment for the Government.

## II. Plaintiffs' Facial Challenge is Overbroad

Not only do Plaintiffs raise claims that are barred by precedent, they do so in the context of a facial challenge. Specifically, Plaintiffs assert that *every* border search of *every* electronic device at the border requires probable cause and a warrant. On Reply, Plaintiffs do not dispute the broad sweep of their facial challenge, or that as a consequence, they have brought the "most difficult [challenge] . . . to mount successfully[.]" *City of Los Angeles, v. Patel*, 135 S. Ct. 2443, 2449, 2451 (2015). Nor do Plaintiffs dispute that they must show that Defendants' challenged policies are "unconstitutional in all of [their] applications." *Id*. at 2451.

Only now do Plaintiffs tell us that they no longer "challenge searches" where an officer verifies that a laptop is operational and contains data. ECF No. 99 at 7. This concession is fatal to Plaintiffs' facial challenge. Yet even crediting Plaintiffs' belated carve-out, that would still require the Government to demonstrate probable cause and a warrant for even the briefest basic device search, *i.e.* an officer examining a digital camera for a few seconds.[1]

Plaintiffs thus ask this Court to find that a warrant is required for the briefest search of "[a]ny device that may contain information in an electronic or digital form, such as computers,

---

[1] Timeliness of searches was not at issue in *Riley*, since the arresting officers had no reason to limit the length of their search. By contrast, at the border "[t]here is a limited amount of time that can be devoted to [a basic device search] while the owner waits at the border for the search to conclude," such that "a conventional search of a digital device . . . necessarily must focus on turning up evidence of contraband or illegal activity within a reasonably limited amount of time." *See United States v. Saboonchi*, 990 F. Supp. 2d 536, 563 (D. Md. 2014), *denying reconsideration*, 48 F. Supp. 3d 815 (D. Md. 2014).

tablets, disks, drives, tapes, mobile phones and other communication devices, cameras, music and other media players." ECF No. 99 at 8. Even if *Riley* has any relevance to border searches, Plaintiffs seek to extend *Riley* far beyond the cell phones addressed in that ruling, to cover a multitude of devices searched at the border. Plaintiffs rest this entire argument on one sentence: that "[t]he Fourth Amendment requires a warrant to search all of these high-volume devices." *Id.* Yet, certainly the potential privacy concerns differ significantly depending on the type of device search at issue. ECF No. 97 at 10. Plaintiffs make no effort to explain why any and all "high-volume devices," such as a voice recorder or a video game console, are more deserving of Fourth Amendment protection than a traveler's physical belongings, car, or home, all of which may be searched at the border without a warrant or reasonable suspicion.

Recognizing the breadth of their claims, on Reply, Plaintiffs invite the Court to limit its ruling to the electronic devices it deems *do* require a warrant. ECF No. 99 at 8. The Court should decline Plaintiffs' invitation for multiple reasons. First, Plaintiffs provide no basis upon which this Court could reasonably categorize every electronic device for purposes of a Fourth Amendment analysis. Second, Plaintiffs made a deliberate decision to bring a facial challenge to border searches of all electronic devices and thus, under the terms of their own Complaint, Plaintiffs must show that every border search of every electronic device is unconstitutional. *See Patel,* 135 S. Ct. at, 2449, 2451. Plaintiffs cannot now, on Reply, amend their operative Complaint to raise countless as-applied challenges to Defendants' policies, each involving a different electronic device. If the Court finds that any border search of any electronic device is constitutional, Plaintiffs' facial challenge necessarily fails.

**III.     The Balance of Interests at the International Border Bar Plaintiffs' Claim**

Assuming, *arguendo*, that Plaintiffs' case is not precluded for the reasons set forth above, the applicable Fourth Amendment test, which requires balancing the relevant interests at the border, firmly supports summary judgment for the Government. Plaintiffs cannot plausibly contest that the Government has the highest interest in national security and territorial integrity at the border – interests that are advanced by device searches – or that travelers' expectations of privacy are significantly reduced in that context. As a result, the Court should conclude that warrants are not required to search all electronic devices at the border.

**A.  The Government's Compelling Interests are Advanced by Device Searches**

At the border, the Government is responsible for, among other things, preventing the introduction of contraband, disrupting crime with a nexus to the border, and administering a wide variety of legal authorities relating to the border. ECF No. 97 at 12-17. Plaintiffs do not dispute that the Government has in numerous instances uncovered electronic contraband and evidence of border-related crimes through border searches of electronic devices.[2]

Admitting that the Government has seized large amounts of contraband in electronic form, Plaintiffs maintain the curious argument that the Government has a lesser interest in

---

[2] Defendants have established that border searches of electronic devices frequently uncover contraband and evidence of border related crimes. ECF No. 97 at 8 n.6 (collecting cases); Declaration of Randy Howe ("Howe Decl."), ECF No. 98-1 at ¶¶ 28-30 (setting forth "numerous incidents" in which device searches revealed information or threats to "national and/or border security"); Declaration of David Denton ("Denton Decl."), ECF No. 98-2 at ¶ 16 (stating that "searches of electronic devices at the border have successfully uncovered threats to national security, illegal activities, contraband, and the inadmissibility of people and things"). Plaintiffs' contention that there is some unspecified frequency of detecting contraband, which might justify warrantless searches of electronic devices, is unsupported in law or fact. ECF No. 99 at 3. To the contrary, the Court in *Riley* held that "the probability" of finding weapons or evidence in a search incident to arrest was irrelevant to the constitutionality of the search. *Riley*, 573 U.S. at 386. The question is instead whether "application of the . . . doctrine to this particular category of effects" would "untether the rule from the justifications underlying the . . . exception." *Id.*

interdicting illegal goods because there may be other conduits for transmitting such materials, such as via the internet, or because the same or similar material may be present in the country. Yet Plaintiffs offer no support for this proposition. Indeed, for electronic contraband like child pornography, the Government has the highest interest in intercepting such illegal goods, regardless of whether copies may exist elsewhere. *Cf. Paroline v. United States*, 572 U.S. 434, 457 (2014) (holding that "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses" child pornography "plays a part in sustaining and aggravating this tragedy" of child abuse).

Plaintiffs next argue that the need to search for evidence of border-related violations of law cannot justify warrantless searches at the border. ECF No. 99 at 4. Plaintiffs' reliance on *Boyd v. United States*, 116 U.S. 616 (1886) to support their assertion that the Government may properly search at the border for contraband but not evidence, is misplaced. Any legal force of *Boyd* in this context was obviated over 50 years ago in *Warden v. Hayden*, 387 U.S. 294, 302 (1967) where the Court held that any distinction between "mere evidence" and an "instrumentality" of a crime was "wholly irrational[.]"

Moreover, Plaintiffs do not dispute that, without the ability to search documents and other potential evidence, Defendants will often have no way of knowing whether a traveler is transporting contraband or otherwise engaging in unlawful transnational activity. Howe Decl. ¶¶ 16, 22, 26; Denton Decl. ¶¶ 17, 24-27. Border searches are undertaken for the purposes of evaluating people and property to determine whether there is any contraband, restricted goods, or indication of activity in violation of the federal laws Defendants are authorized to enforce or administer. It is for this reason that courts have *uniformly upheld* the ability of officers to review, without a warrant, physical documents as well as electronic materials to search for

potential evidence in the context of a border search. *See, e.g., United States v. Kolsuz*, 890 F.3d 133, 143-44 (4th Cir. 2018); *United States v. Barconey*, Crim. A. No. 2017-0011, 2019 WL 137579, at *16 n. 37 (D.V.I. Jan. 8, 2019) (holding search of documents was justified under border search exception and collecting cases); *United States v. Blackwell*, Case No. 18-CR-0138 (PJS/LIB), 2018 WL 6804803, at *5 (D. Minn. Dec. 27, 2018) (finding no suspicion required to search envelope or read a traveler's letter at the border). Indeed, Plaintiffs fail to cite to a single case in which a warrantless border search was found impermissible because it involved a review of documents or other evidence. In sum, searches for evidence related to contraband or violations of federal law is a well-established basis for warrantless border searches, and this interest is significantly advanced by electronic device searches.[3]

## B. A Warrant Requirement Would Threaten National Security

Since border searches of electronic devices advance the Government's interests of national security and territorial integrity, imposing the unprecedented requirement of a warrant would necessarily threaten those interests. Officers would be unable to search electronic devices in the vast majority of cases, because officers have limited or no information about the more than one million travelers who cross the border each day. Defs' SUMF ¶¶ 14, 20 (ECF No. 98); *accord United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985) (finding that "inspectors [at the border] will rarely possess probable cause to arrest or search, yet governmental interests in stopping smuggling at the border are high indeed"). Moreover, as this

---

[3] Plaintiffs argue that the Government may not assert an interest in "general law enforcement." Though that phrase is undefined, the Government does not assert a nebulous "general" law enforcement interest in border searches. Certainly, as set forth above, the Government has an interest searching for contraband, threats to border security, and evidence of crimes with a nexus to the border, such as human trafficking, drug smuggling, and immigration fraud, among many others. By the same token Defendants will not initiate a border search to locate evidence of crimes that lack a nexus to the border. *See* Howe Decl. ¶ 17; Denton Decl. ¶ 10.

very Court previously recognized, even "[r]equiring reasonable suspicion for all computer searches may allow individuals to render graphic contraband, such as child pornography, largely immune to [a] border search simply by scanning images onto a computer disk before arriving at the border." *See House v. Napolitano*, Civ..A. No. 11-10852-DJC, 2012 WL 1038816, at *8 (D. Mass. Mar. 28, 2012) (citation omitted). Finally, requiring a warrant for every border search of every electronic device would likely impede the ability of Defendants to uncover electronic contraband and evidence of serious crimes and other violations of federal law occurring at the border. *See* Howe Decl. ¶ 35.

To the extent there is an interest in refining the standards for border searches of devices, it is legislatures, not courts, that are often in the best position to balance delicate matters of national protection and security against potential privacy concerns. Indeed, multiple bills have been proposed in Congress, which, if enacted, would govern the search of certain electronic devices at the border. *See* S. 1606, 116th Cong. (generally requiring a warrant for device border searches, with certain exceptions); S. 2462, 115th Cong. (generally requiring reasonable suspicion for "manual" searches, and probable cause for "forensic" searches). But, if this Court grants Plaintiffs' claims here, that decision would necessarily "blanket the field of border searches by preempting constitutionally the contributions that the other two branches of our government are constitutionally empowered and uniquely positioned to make[.]" *Kolsuz*, 890 F.3d at 151 (Wilkinson, J. concurring). The Court should therefore decline Plaintiffs' invitation to engage in such a sweeping rewrite of the border search doctrine.

**C. The Privacy Interest of Travelers is Significantly Diminished at the Border**

Plaintiffs now appear to dispute the notion that international travelers have diminished privacy interests under the Fourth Amendment. *See* ECF No. 99 at 2. But in their original

7

motion, Plaintiffs conceded that "at the border . . . a traveler's privacy interests are ordinarily reduced[.]" Pls.' Mot. for Summ. J., at 10 (ECF No. 90-1). Plaintiffs' original concession was well-founded, as the Supreme Court has repeatedly held that a traveler's "expectation of privacy [is] less at the border than in the interior." *Montoya de Hernandez*, 473 U.S. at 539; *United States v. Flores-Montano*, 541 U.S. 149, 154 (2004) (same).

Indeed, even before *Riley*, there was ample precedent for a warrant requirement to conduct a search in the context of an arrest. *See* 573 U.S. at 392. But in the border context, no court has ever required a warrant for any type of search. *See United States v. Molina-Isidoro*, 884 F.3d 287, 292 (5th Cir. 2018). Moreover, Plaintiffs do not dispute that a warrant is generally required in the context of an arrest to search the arrestee's home, car or belongings. ECF No. 97 at 19. Yet border officers may search a traveler's luggage, vehicle and mobile home, without a warrant or reasonable suspicion. *See supra* at 1-2. Not only are a traveler's expectations of privacy significantly reduced at the border, they also are not comparable to the privacy concerns evaluated in *Riley*.

A weighing of the relevant interests here thus precludes the warrant requirement found necessary in *Riley*. First, at the border the Government has far different and more significant interests than those in *Riley*, and those interests are clearly tethered to electronic device searches, another distinction from *Riley*. A warrant requirement in this context would therefore pose a significant threat to national security and law enforcement, risks that were absent in the search incident to arrest context in *Riley*. Weighed against these compelling interests and risks is an expectation of privacy at the border that is both materially diminished and dissimilar from that considered in *Riley*. And not only are the Government interests stronger at the border and the privacy interests weaker, "the Fourth Amendment's balance of reasonableness is qualitatively

8

different at the international border than in the interior," in that the balance is "struck much more favorably to the Government[.]" *Montoya de Hernandez*, 473 U.S. at 538, 540. It is for all these reasons that no court has ever held a warrant to be required at the border, and this Court should rule similarly and grant the Government's cross-motion for summary judgment.

### D. Plaintiffs Cannot Show that a Lesser Standard is Required

Plaintiffs' Motion failed to provide any substantive argument as to why the Fourth Amendment requires probable cause or reasonable suspicion for all border searches of electronic devices, and Plaintiffs Reply contains a mere two paragraphs on this issue -- that only argue that these hypothetical arguments, which have not been set out, have not been waived. ECF No. 99 at 9. In their Motion, Plaintiffs briefly asserted that a probable cause standard is "necessary" given the purported privacy concerns at issue, but failed to explain in any detail why that is the case, or to provide any reasoning to which Defendants might be able to respond. ECF No. 90-1 at 19. Plaintiffs did not even provide this bare assertion as to reasonable suspicion, and merely noted that "courts have required reasonable suspicion for certain 'non-routine' border searches." *Id.* at 20.

Plaintiffs' failure to provide any substantive discussion as to why a lesser standard is required here supports a finding of waiver. The First Circuit has consistently held that "parties must speak clearly in the trial court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace*." Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 627 (1st Cir. 1995). This rule means that litigants have a "duty to incorporate all relevant arguments" in a pending motion and to present them "squarely and distinctly. These requirements are even more incumbent when, as here, a party urges the court to adopt new legal principles." *Rocafort v. IBM Corp.*, 334 F.3d 115, 122 (1st Cir. 2003).

Regarding waiver, rather than set forth any substantive argument to which Defendants can respond, Plaintiffs assert only that their Amended Complaint contains a boilerplate request for "other and further relief," apparently in the belief that this clause enables the Court to require probable cause or reasonable suspicion in all border searches of all electronic devices. It does not. *See Town of Portsmouth, v. Lewis*, 813 F.3d 54, 61 (1st Cir. 2016) ("[A] district court need not consider remedies based on a cause of action not pled in the complaint."); *Isaacs v. Dartmouth Hitchcock Med. Ctr.*, No. 12-CV-40-JL, 2012 WL 2088821, at *2 (D.N.H. June 8, 2012) ("A plaintiff cannot obtain preliminary injunctive relief on a claim that is not even set forth in the complaint."). Further, Plaintiffs sole mention of "other relief" in their Amended Complaint ignores the fact that Plaintiffs failed to raise any material argument on these points in their Summary Judgment Motion , and they again failed to do so on Reply.

Finally, even if the Court were to consider these undeveloped claims, Plaintiffs must establish that every border search of every electronic device is just as "intrusive" as a "strip search," to even require reasonable suspicion. *See United States v. Braks*, 842 F.2d 509, 514 (1st Cir. 1988). Plaintiffs have not made any such showing. Thus, this Court should find Plaintiffs' arguments waived, or at the very least, meritless. *Accord Doherty v. Merck & Co.*, 892 F.3d 493, 501 (1st Cir. 2018) (holding that "[s]uch a skimpy effort to advance an issue—much less a constitutional challenge . . . waives the issue").

### IV. Probable Cause is Not Required to Detain an Electronic Device Anytime a Traveler Leaves the Border

Plaintiffs also argue on Reply that "the Fourth Amendment requires the Government to have probable cause before confiscating an electronic device after a traveler has left the border." ECF No. 99 at 9. But the First Circuit held in *Molina-Gomez* that, at most, reasonable suspicion is required to detain an electronic device after a traveler leaves the border. 781 F.3d at 19. Now

Plaintiffs suggest they are only challenging instances of "confiscation" of an electronic device for purposes of searching the data on that device, and not all detentions of electronic devices. ECF No. 99 at 9-10. But this is not how they described their claim in their Motion or even elsewhere on Reply. *See id.* at 10 ("where the government does not have probable cause to keep an electronic device after a traveler has left the border, such a confiscation is constitutionally unreasonable"). Plaintiffs' attempt to escape *Molina-Gomez* is accordingly groundless.

Even if there were any daylight between the First Circuit's holding in *Molina-Gomez* and Plaintiffs' precise argument here, Plaintiffs' claim still fails. The Supreme Court has explicitly rejected "hard-and-fast time limits" on the length of a detention at the border and has instead held that "common sense and ordinary human experience must govern over rigid criteria." *Montoya de Hernandez*, 473 U.S. at 543. Thus, while Plaintiffs argue that they "do not seek 'an arbitrary and inflexible time limit,'" ECF No. 99 at 10, their claim demands precisely that: the Government must have probable cause to detain an electronic device at the moment a traveler leaves the border. This claim is accordingly barred by *Montoya de Hernandez*.

Having just disavowed any claim for a strict time limit on border detentions, Plaintiffs appear to raise a separate argument that Defendants' "policies" are unconstitutional because they provide "no meaningful limit on [the] duration" of a detention. ECF No. 99 at 10. Yet, Plaintiffs do not suggest what time limit is mandated by the Fourth Amendment on any and all border detentions of electronic devices. Indeed, Defendants are implementing policies that follow the precise guidance of the Supreme Court, *Montoya de Hernandez*, 473 U.S. at 543, examining the relevant facts and circumstances of each detention, rather than arbitrarily limiting the time provided to detain any and all electronic devices. *See* Defs.' SUMF ¶ 12. (ECF No. 98).

11

## V. Plaintiffs Cannot Show a First Amendment Violation

Plaintiffs fare no better with respect to their First Amendment argument. Indeed, the mere "existence of First Amendment 'interests' does not give rise to any substantive or procedural protections above and beyond those afforded by the Fourth Amendment." *Reporters Comm. for Freedom of the Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1056 (D.C. Cir. 1978). Unsurprisingly, Plaintiffs fail to cite to any case where a border search was found permissible under the Fourth Amendment, but deficient under the First, and a warrant requirement would be similarly unfounded and inappropriate here.

Even if this First Amendment claim could produce a different result from Plaintiffs' Fourth Amendment challenges, it would fail. As Defendants previously explained, inspecting goods and baggage at the border is an essential tool in uncovering contraband or evidence of violations of federal law with a nexus to the border, neither of which is protected by the First Amendment. Thus, any access to protected "expressive materials," is incidental rather than intentional. Moreover, Defendants' compelling interests in preventing the introduction of contraband and disrupting threats to border security reflect a substantial relationship between the governmental interest and the information required to be disclosed. *See generally* Howe Decl.; Denton Decl. In response, Plaintiffs contend only that Defendants' policies constitute an "untailored approach[.]" ECF No. 99 at 11. Yet even if tailoring requirements were applicable, Plaintiffs fail to articulate how the Government could reasonably achieve its interests at the border by searching a more limited set of information on an electronic device, and what types of information would be permissible to search.

In their final substantive argument, Plaintiffs effectively make Defendants' case that a finding of a First Amendment violation here would likely require a warrant to search any

expressive material at the border, regardless of format. *See United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005). Plaintiffs concede that their First Amendment claim is "premised on the argument that border searches of electronic devices are constitutionally problematic . . . because such searches necessarily entail the reading of content." ECF No. 99 at 12. "Following [Plaintiffs'] logic would create a sanctuary at the border for all expressive material—even for terrorist plans. This would undermine the compelling reasons that lie at the very heart of the border search doctrine." *Ickes*, 393 F.3d at 506*; see also United States v. Scott*, No. CR-07-093-RHW, 2008 WL 11451918, at *3 (E.D. Wash. Mar. 12, 2008) (same). Thus, a warrant requirement to review any expressive "content" on electronic devices would likely lead to a warrant requirement to view any and all expressive content at the border, and all of the "staggering" consequences that such strictures would entail. *See Ickes*, 393 F.3d at 506.

## VI. Plaintiffs Cannot Establish Standing

### A. Plaintiffs Lack Standing to Seek Expungement

Plaintiffs have provided no factual or legal support for their assertion that they have standing to seek expungement of Defendants' official agency records that document border searches.[4] Plaintiffs have not established that Defendants have violated the Constitution or any other laws by maintaining such agency records. And they have failed to show any actual or imminent injury from the retention or potential future use of any information in those records. *See Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998) (the government's use of "evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."); *Herring v. United States*, 555 U.S. 135, 141-42 (2009) ("We have repeatedly

---

[4] Plaintiffs have withdrawn their request for expungement relating to Plaintiff Wright. Pls. Opp'n at n. 7.

rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."), *rehearing denied*, 556 U.S. 1161 (2009). Moreover, the cases Plaintiffs rely upon to assert standing are distinguishable. For example, in *Jansfeshan v. CBP*, No. 16-cv-6915, 2017 WL 3972461, *5-6 (E.D.N.Y. Aug. 21, 2017), the court merely found that at the motion to dismiss stage where plaintiff's burden to show injury is "relatively modest" that the plaintiff had adequately alleged standing. *See also Fox v. District of Columbia*, 851 F. Supp. 2d 20, 29 (D.D.C. 2012) (noting that a request to have an arrest record expunged was the sort of relief that *could* give rise to a case or controversy). In contrast, at the summary judgment stage, Plaintiffs' speculative assertions of a future possibility that the Government may use the information against them in the future must be rejected. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that plaintiffs cannot rest on "mere allegations" at summary judgment but must set forth "specific facts").

### B. Plaintiffs Lack Standing Based on Likelihood of a Future Search

Plaintiffs' assertions that they have standing based on the likelihood of a future search must also be rejected. The vast majority of Plaintiffs assert that they have standing because they have been searched at least once, and therefore have a greater risk of being searched again. ECF No. 99 at 18. However, it is undisputed that information relating to past border searches of electronic devices is not generally available to CBP offices at primary inspection. *See* Pls. Resp. to Defs' SOMF ¶ 18 (ECF No. 99-1; 103-1). Nor do Plaintiffs' dispute that six of the 11 plaintiffs have only had their electronic devices searched once, *id*. ¶ 51 or that only two plaintiffs have been searched in the past two years. *Id*. ¶¶ 53; 125.1. Thus, Plaintiffs have failed to establish that they are at any greater risk of a future device search than any of the other millions

of people who travel internationally each year – a risk that is undisputedly low. Joint Statement of Stipulated Facts ¶ 13 (ECF No. 91-45).

This court should also summarily reject Plaintiffs' alternative basis for standing: probabilistic injury. ECF No. 99 at 20. As the First Circuit has stated "where, as here, the alleged present harm depends solely on the risk of some future injury, [the court] must proceed cautiously." *Kerin v. Titeflex Corp*., 770 F.3d 978, 981 (1st Cir. 2014). Here, there is no dispute that there is only a 0.007% chance of a border device search, Stipulated Facts ¶ 13, which clearly cannot not support Plaintiffs' claim of "substantial risk" of injury. *See Kerin*, 770 F.3d at 983 (rejecting standing based on "remote" risks or an "exceedingly low probability" of harm).

*    *    *

For the foregoing reasons and those set forth in Defendants' Cross Motion (ECF No. 97), this Court should grant Summary Judgment to Defendants and deny Plaintiffs' Motion for Summary Judgment.

Dated: July 15, 2019

Respectfully submitted:

JOHN R. GRIFFITHS
Director, Federal Programs Branch

DIANE KELLEHER
Assistant Director, Federal Programs Branch

MARSHA STELSON EDNEY
Senior Trial Counsel
/s/ *Michael Drezner*
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division/Federal Programs
T: (202) 514-4505
Email: Michael.Drezner@usdoj.gov
Attorneys for Defendants